CONNER, J.

On Remand from the Florida Supreme Court

The portion of our previous decision rendered June 12, 2013, with regards to the defense of the statute of repose, having been quashed by the Florida Supreme Court by an order entered March 15, 2016, we withdraw our previous opinion and substitute the following in its place.
This is an Engle[1] progeny case. Philip Morris USA, Inc. and R.J. Reynolds Tobacco Company, together with Liggett Group LLC (collectively, “the Tobacco Companies”), appeal the trial court’s entry of an amended final judgment in favor of Sharon Putney, as personal representative of the estate of Margot Putney (“the Plaintiff’). The Tobacco Companies raise four grounds for reversing the final judgment. We affirm the trial court’s decisions, without discussion, on the Tobacco Companies’ claim that the trial court abused its discretion in denying a cause challenge to a juror and that the trial court erred in entering *468 summary judgment on the affirmative defense regarding the statute of repose.[2] Regarding the verdict finding the Tobacco Companies liable for conspiracy, we hold the trial court properly denied the post-judgment motion for judgment in their favor. We also hold the trial court abused its discretion in denying a motion for re-mittitur of compensatory damages for loss of consortium, as the compensatory damage award was excessive compared to similarly situated cases.[3] Because we affirm the trial court’s decision on the statute of repose issue, on remand we direct the trial court to reinstate the punitive damage awards against Philip Morris and R.J. Reynolds.

Factual Background

The Plaintiff brought suit against the Tobacco Companies for the wrongful death of her mother, Margot Putney. In her second amended complaint, the Plaintiff alleged Margot’s death was the result of small-cell carcinoma of the lung and alleged claims of strict liability, negligence, fraud by concealment, and conspiracy to commit fraud by concealment. The Plaintiff sought recovery for the estate and for loss of consortium for herself and her two adult siblings. The Plaintiff also sought punitive damagés.
The jury returned a verdict finding for the Plaintiff on negligence, strict liability, and conspiracy to commit fraud by concealment. The jury found for the Tobacco Companies on the fraud by concealment claim. The jury found Philip Morris 15% responsible for. Margot’s death, R,J. Reynolds 30% responsible, Liggett 20% responsible, and Margot herself 35% responsible. The jury awarded Margot’s estate $86,688.96 for medical and funeral expenses and five million dollars to each of Margot’s three surviving children for loss of consortium. Further,’ the jury found punitive damages were warranted against Philip Morris and R.J. Reynolds, but not Liggett, on the conspiracy claim, and assessed $2.5 million against each of-them.
Post-trial, the trial court denied the Tobacco Companies’ motion for a judgment in them favor on the conspiracy count. The trial court also denied their motion for remittitur on the consortium award by the jury.

Conspiracy Award Despite No Liability for Fraudulent Concealment

The Tobacco Companies argue that the trial court erred in denying their post-trial motion for judgment on the conspiracy to commit fraudulent concealment claim because the Plaintiff presented insufficient evidence to support the claim. More particularly, the Tobacco Companies argue that because the jury found for them on the fraudulent concealment claim, the conspiracy to commit fraudulent concealment claim must also fail. The Tobacco Companies rely on Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984), for the proposition that “[a]n actionable conspiracy requires an actionable underlying tort or wrong.” Id. at 1165. They further rely on our opinion in Palm Beach County Health Care District v. Professional Medical Education, Inc., 13 So.3d 1090 (Fla. 4th DCA 2009), for the proposition that when “the counts regarding the goals of the conspiracy ... fail, so too the conspiracy count must fail.” Id. at 1096. Additionally, the Tobacco Companies argue that the Plaintiff failed to prove Margot relied upon any statements made by any of the alleged co-conspirators.
*469 Our review of the issue is de novo. Diamond v. Rosenfeld, 511 So.2d 1031 (Fla. 4th DCA 1987); Meruelo v. Mark Andrew of the Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009).
“The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff.” Id. (quoting Liappas v. Augoustis, 47 So.2d 582, 582 (Fla.1950)). However, in Palm Beach County Health Care District, we made reference to an exception to the general rule, citing Liappas and Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164, 165 (Fla.1958). Id. at 1096 n. 3. In Liappas, our supreme court recognized an independent tort of conspiracy “where mere force of numbers acting in unison or other exceptional circumstances may make a wrong.” Liappas, 47 So.2d at 583 (quoting DesLauries v. Shea, 300 Mass. 30, 13 N.E.2d 932, 935 (1938)). The court said, “in order to prove an independent tort for conspiracy upon the basis of ‘mere force of numbers acting in unison,’ it must be shown that there was some ‘peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had.’ ” Id. (quoting DesLauries, 13 N.E.2d at 935).[4]
Three Engle findings relevant to this case are entitled to res judicata effect:
(ii) “that nicotine in cigarettes is addictive;” ... (iv) “that the [Engle ] defendants concealed or omitted materia! information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both;” (v) “that the [En-gle] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment!)]”
Philip Morris USA, Inc. v. Douglas, 110 So.3d 419, 424 (Fla.2013) (alterations in original). In combination, those Engle findings preclusively establish that the Tobacco Companies engaged in a conspiracy to conceal or omit information regarding the health effects of cigarettes and their addictive nature with the intention that smokers and the public would rely on the information to their detriment. The Engle findings also establish there were other companies producing tobacco products, besides the Tobacco Companies involved in this case, who were co-conspirators. Id. Given the number of co-conspirators involving the major players in the tobacco industry, the breadth of the conspiracy, and the addictive nature of cigarettes, we conclude that the conspiracy alleged in this case is an independent tort of conspiracy “where mere force of numbers acting in unison or other exceptional- circumstances may make a wrong,” See Liappas, 47 So.2d at 583. The unified actions of the conspirators, coupled with the addictive nature of cigarettes, resulted in the conspirators exerting a “peculiar power of coercion” over Margot. See id.
Regarding the contention that the Plaintiff failed to prove that Margot relied upon any statements made by any of the co-conspirators, the Plaintiff points out that the jury verdict included the following two questions:
3. Please state as to each defendant whether Margot Putney reasonably *470 relied to her detriment on a statement by that defendant which concealed or omitted material information and, if so, whether such reliance was a legal cause of her death.
4. Please state as to each defendant whether Margot Putney reasonably relied to her detriment on a statement made in furtherance of that defendant’s agreement to conceal or omit material information and, if so, whether such reliance was a legal cause of her death
(emphases added). The Plaintiff then argues that R.J. Reynolds Tobacco Company v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010), supports the denial of a judgment in favor of the Tobacco Companies on this issue of proof of reliance. We agree. Similar to the situation in Martin, the record in this case contains sufficient evidence from which' the jury could decide that Margot relied (1) on pervasive, misleading advertising campaigns for cigarettes' in general, and' (2) on the false controversy created by the tobacco industry during the years she smoked (aimed at creating doubt among smokers that cigarettes were hazardous to health) without the necessity of proving Margot relied on any specific statement from a specific co-conspirator. See also R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331, 333 (Fla. 1st DCA 2012). Thus, we hold the trial court did not err in denying the Tobacco Companies’ motion for judgment in their favor on the conspiracy claim.

Remittitur on Consortium Damages

The Tobacco Companies argue that the trial court abused its discretion in not granting their motion for remittitur on the five million dollar awards to each of the three surviving children for loss of consortium. They contend the awards are excessive compared to those in similar cases and were improperly motivated by passion and prejudice.
A trial court’s ruling on a motion for remittitur is reviewed for abuse of discretion. City of Hollywood v. Hogan, 986 So.2d 634, 647 (Fla. 4th DCA 2008). “Remittitur cannot be granted unless the amount of damages is so excessive that it shocks the judicial conscience and indicates that the jury has been influenced by passion or prejudice.” Progressive Select Ins. Co. v. Lorenzo, 49 So.3d 272, 278 (Fla. 4th DCA 2010) (citations and internal quotation marks omitted).
“Under Florida law an award of non-economic damages must ‘bear a reasonable relation to the philosophy and general trend of prior decisions in such cases.’ ” Bravo v. United States, 532 F.3d 1154, 1162 (11th Cir.2008). The Plaintiff argues that the verdict is not excessive, relying on Martin, in which the surviving spouse was awarded five million dollars in compensatory damages. The Plaintiff also cites to some unpublished jury verdicts, including an eight million dollar compensatory damages verdict awarded to the surviving daughter of a smoker in Webb v. R.J. Reynolds Tobacco Co., Case No. 382009CA001285 (Fla. 8th Cir.Ct.2010). However, on appeal, the First District found that verdict excessive. Webb, 93 So.3d at 338. The court in Webb explained its reasoning:
Of the thirty-five Engle cases we examined in which the jury awarded compensatory damages, the juries awarded compensatory damages as great as $7 million in only eight cases. Of these eight cases, three were cases in which the plaintiff was the cigarette smoker and the verdicts included economic damage awards. In the others, the decedents died at a much younger age than Mr. Horner did, or were survived by a spouse, by spouse and child, or by two or more children. Our research has failed to uncover a single case in which an adult child received a wrongful death *471 award of this magnitude that was affirmed on appeal (either in Engle progeny cases or other wrongful death actions).
Id. at 387-38 (footnotes omitted).
As noted by the Tobacco Companies, all of Margot’s children were adults at the time of her diagnosis and death, and none of them testified that they lived with her or relied on her for support. Appellate decisions that have upheld large consortium awards in tobacco cases involve much closer relationships between the parties and the decedents during the decedent’s illness. For example, in R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307 (Fla. 1st DCA 2012), the First District upheld a $10.8 million compensatory award to the wife of the deceased smoker. Id. at 311-12. They had been married for 39 year’s. Id. at 312. The wife had to stay in Florida while the husband traveled to Chicago for treatment in order to support the family and then had to personally care, for him “as he lay dying during the final six months.” Id. The husband was diagnosed just as the wife was about to retire, so they could not “realize their life-long dream of traveling together.” Id.
The Plaintiff argues that the loss of consortium awards were supported by the evidence presented at trial. One of Mar-got’s sons testified how he visited his mother as often as he could once he heard of her lung cancer diagnosis, but it was difficult to do because he had his own family. He further testified that his mother never forgot birthdays and she gave all three of her children a goodbye letter on her last birthday. Another of Margot’s sons testified that his mother’s diagnosis had an emotional impact on him, and he would visit or call every day. Not surprisingly, he misses his mother most on special occasions, such as holidays and birthdays. The Plaintiff, Margot’s daughter, testified that when she learned of her mother’s diagnosis, she was too emotional to talk about it. She accompanied her mother to chemotherapy treatments, which “killed” her on the inside, because it made her think about losing her mother. The Plaintiff also told the jury how her mother was so ill on the Plaintiffs birthday that her mother could not say “happy birthday,” and she went into a coma soon after, dying nine days later. The Plaintiffs boyfriend testified as to how upset the Plaintiff had been since her mother’s death and how it devastated her.
While the above testimony may establish that Margot’s adult children are entitled to a consortium award, we agree with the Tobacco Companies’ argument that the loss of consortium awards were excessive compared to those in similar cases and shock the judicial conscience because there was not evidence of the type of close or supportive relationship that would justify such an award. The trial court erred in failing to grant remittitur.

Conclusion

We affirm the trial court’s denial of the Tobacco Companies’ motion to set aside the verdict and for judgment in their favor on the conspiracy claim. We hold that the trial court erred in failing to grant the motion for remittitur as to the loss of consortium award. Because our previous decision regarding the statute of repose defense has been quashed, we direct the trial court to reinstate the punitive damage awards against Philip Morris USA, Inc. and R.J. Reynolds Tobacco Company. We remand the case for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

TAYLOR and LEVINE, JJ., concur.

. Engle v. Liggett Group, 945 So.2d 1246 (Fla.2006).

. Hess v. Philip Morris USA, Inc., 175 So.3d 687, 698 (Fla.2015); Philip Morris USA, Inc. v. Russo, 175 So.3d 681, 685 (Fla.2015).

. We also affirm, without discussion, two issues raised separately by Liggett and by the Plaintiff’s cross-appeal.

. The recognition of an independent tort for conspiracy based on “mere force of numbers” was again discussed by our supreme court in Snipes, 105 So.2d at 166.