DAMOORGIAN, J.
R.J. Reynolds Tobacco Company (“RJR”) appeals the final judgment entered in favor of Gwendolyn Odom as Representative of the estate of her deceased mother, Juanita Thurston (“Plaintiff”). RJR argues for reversal on multiple grounds. First, it argues that the court erred in denying its motion to remit the jury’s compensatory damages award. Sec *698 ond, it maintains that the court improperly-denied its motion for directed verdict on Plaintiff’s concealment and conspiracy claims because Plaintiff failed to prove that her mother relied on a false or misleading-statement made by RJR after May 5,1992. Third, it asserts that certain comments made by Plaintiffs counsel during closing of the punitive phase necessitate a new trial. Fourth, it argues that the court’s application of the Engle[1] findings violated its due process rights. Plaintiff cross-appeals, arguing that in the event of a new trial: 1) the trial court provided an erroneous instruction on the applicable statute of repose, and 2) improperly ruled that Plaintiff was not permitted to pursue punitive damages for her product defect and negligence claims.
We affirm on the reliance and due process issues without further comment. See Hess v. Philip Morris USA, Inc., 175 So.3d 687, 698 (Fla.2015); Philip Morris USA, Inc. v. Douglas, 110 So.3d 419, 430-35 (Fla.2013). As discussed further below, we also affirm on the closing comments issue. However, we reverse and remand for remittitur of the jury’s damage awards. In the event that the parties reject the court’s remittitur and a new trial on damages results, we grant Plaintiff the relief requested in her second point on cross-appeal.

Background

Plaintiff filed suit against RJR asserting membership in the Engle class because her mother died from lung cancer “caused by her addiction to cigarettes.” In her suit, Plaintiff alleged causes of action for strict liability, negligence, fraud by concealment, and conspiracy to commit fraud by concealment. The case proceeded to trial in two phases. In the first phase, the jury was asked to: 1) determine whether Ms. Thurston was a member of the Engle class; 2) if so, whether RJR’s conduct was the legal cause of her death; and 3) determine damages/entitlement to punitive damages. The jury found in favor of Plaintiff and awarded her $6 million in compensatory damages. It allocated Ms. Thurston’s comparative fault for her injuries at 25%. It also found that punitive damages were warranted.
The second phase of the trial concerned the proper amount of punitive damages. During Phase II, RJR argued to the jury that the “conduct that injured Juanita Thurston ... ended at least 25 years ago” and since then, RJR had “turned the corner, changed its ways, became a new company and started doing things the right way, acting as a responsible company in the tobacco industry.” In support of its position, RJR presented testimony from its vice president of cigarette product development, who testified that RJR was focused on developing safer alternatives to smoking. In turn, during its closing, Plaintiffs counsel argued that despite its rhetoric, RJR deserved to be punished for Ms. Thurston’s death and had yet to accept responsibility or apologize for its actions. At the conclusion of Phase II, the jury awarded Plaintiff $14 million in punitive damages.
Following the trial, RJR moved to set aside the verdict in accordance with its motions for directed verdict on the detrimental reliance issue. Alternatively, it asked for a new trial on the grounds that Plaintiff improperly disparaged RJR for defending itself during closing arguments. Lastly, RJR moved for remittitur of the compensatory award, arguing that the award was excessive when compared to other awards made to surviving adult children. The trial court denied all of RJR’s motions and entered judgment in favor of *699 Plaintiff for $18.5 million. This appeal follows.

Analysis

a) Remittitur of the Compensatory Damage Award

“We review an order denying a motion for remittitur or a new trial under an abuse of discretion standard.” City of Hollywood v. Hogan, 986 So.2d 634, 647 (Fla. 4th DCA 2008).
Pursuant to Florida’s remittitur and ad-ditur statute, section 768.74 of the Florida Statutes, the trial court has the responsibility to review the amount of an award and determine if it is excessive or inadequate “in light of the facts and circumstances which were presented to the trier of fact.” § 768.74(1), Fla. Stat. (2014). “If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.” § 768.74(2), Fla. Stat. (2014). In making its determination, the trial court is guided by the following statutory considerations:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
§ 768.74(5), Fla. Stat. (2014).
Compensatory damages are intended to redress or compensate for a concrete loss. R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307, 310 (Fla. 1st DCA 2012). Where the loss is of a non-economic nature, however, such as for mental pain and anguish and for loss of consortium, the valuation is inherently difficult. Id. at 310-11. Because no formula can determine the value of such a loss, great deference is given the jury’s estimation of the monetary value of the plaintiffs mental and emotional pain and suffering. Id. ‘“The fact that a damage award is large does not in itself render it excessive nor does it indicate that the jury was motivated by improper consideration in arriving at the award.’ ” Id. (quoting Allred v. Chittenden Pool Supply, Inc., 298 So.2d 361, 365 (Fla.1974)). Rather, a compensatory damage award is only excessive if it is so large that it exceeds the maximum limit of a reasonable range. Id. “In reviewing an award of damages for excessiveness, the court may consider the philosophy and general trend of decisions in comparable cases.” R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331, 337 (Fla. 1st DCA 2012).
When it comes to wrongful death awards, including those in the Engle context, courts have drawn a distinction between compensatory damages awarded to surviving spouses and to adult children. In Webb, the First District reversed an $8 million award to an adult surviving child of a cigarette smoker on the grounds that it was excessive as compared to other awards. 93 So.3d at 337, 339. It explained:
Of the thirty-five Engle cases we examined in which the jury awarded compensatory damages, the juries awarded *700 compensatory damages as great as $7 million in only eight cases. Of these eight cases, three were cases in which the plaintiff was the cigarette smoker and the verdicts included economic damage awards. In the others, the decedents died at a much younger age than Mr. Horner did, or were survived by a spouse, by spouse and child, or by two or more children. Our research has failed to uncover a single case in which an adult child received a wrongful death award of this magnitude that was affirmed on appeal (either in Engle progeny cases or other wrongful death actions).
Id. at 337-38 (footnotes omitted).
The Webb court arrived at this decision even though the evidence established that the adult child plaintiff and her decedent father shared a very “close relationship.” Id. at 338. Specifically, the evidence established that the adult child became deaf as an adult and also had a special needs child who required around-the-clock care. Id. at 338-39. Due to her and her child’s disabilities, the adult child moved across the street from her father who was instrumental in caring for his grandchild until the grandchild died of her disability. Id. The court held that rather than serving as justification, this evidence actually tainted the jury’s award. Id. at 339. In other words, it held that evidence of the parties’ relationship before the decedent’s illness and death was not a proper basis for awarding compensatory damages. Id. Rather, the Webb court clarified that the proper measure of damages should have been based on “evidence of [the decedent’s] illness, subsequent death, and the noneconomic consequences of the death itself.” Id. Because the evidence established that at the time her father died, the adult child plaintiff was “not wholly dependent on his companionship, instruction and guidance,” the court held that the jury’s award could not stand. Id.
Citing to Webb in Philip Morris USA Inc. v. Putney, 199 So.3d 465, 470-71 (Fla. 4th DCA 2016), this Court considered whether the following evidence concerning the impact of a decedent’s illness and subsequent death on her adult children was sufficient to justify a $5 million award to each child:
One of [the decedent’s] sons testified how he visited his mother as often as he could once he heard of her lung cancer diagnosis, but it was difficult to do because he had his own family. He further testified that his mother never forgot birthdays and she gave all three of her children a goodbye letter on her last birthday. Another of [the decedent’s] sons testified that his mother’s diagnosis had an emotional impact on him, and he would visit or call every day. Not surprisingly, he misses his mother most on special occasions, such as holidays and birthdays. The Plaintiff, [the decedent’s] daughter, testified that when she learned of her mother’s diagnosis, she was too emotional to talk about it. She accompanied her mother to chemotherapy treatments, which ‘killed’ her on the inside, because it made her think about losing her mother. The Plaintiff also told the jury how her mother was so ill on the Plaintiffs birthday that her mother could not say ‘happy birthday,’ and she went into a coma soon after, dying nine days later. The Plaintiffs boyfriend testified as to how upset the Plaintiff had been since her mother’s death and how it devastated her.
Analyzing similar cases, we held that awards of such magnitude are reserved for cases involving “much closer relationships between the parties and the decedents during the decedent’s illness.” Id. at 471. For example, we noted that in Townsend, *701 a $10.8 million compensatory award was affirmed in favor of the wife of a deceased smoker where the wife and the decedent were married for 39 years and the wife had to be separated from her husband while he received treatment for financial reasons, was not able to retire as a result of his illness, and then personally cared for him as he “laid dying” for six months. Id. (citing Townsend, 90 So.3d at 307). Based on Townsend and other precedent, we concluded that in the Putney case, “there was not evidence of the type of close or supportive relationship that would justify such an award.” Id.
Read together, Webb and Putney establish that no matter how strong the emotional bond between an adult child and a decedent parent may be, an adult child who lives independent of the parent during the parent’s smoking related illness and death is not entitled to multi-million dollar compensatory damages award, even if the child was involved in the facilitation of the parent’s treatments and suffered tremendous grief over the loss of the parent. Cases from outside the tobacco arena support this conclusion.
In MBL Life Assurance Corp. v. Suarez, 768 So.2d 1129, 1136 (Fla. 3d DCA 2000), the Third District held that an award of $1 million to each of a decedent’s four adult surviving children was “excessive” where none of the children were financially dependent on or residing with the decedent at the time of his death. In National Railroad Passenger Corp. v. Ahmed, 653 So.2d 1055, 1059 (Fla. 4th DCA 1995), this Court affirmed a $400,000 compensatory damages award to adult surviving children for the loss of their parent with whom they did not live at the time of his death, but in doing so, noted that it was “indeed a generous award” that “raises a judicial eyebrow.” (citations and internal quotation marks omitted).
Based on the foregoing precedent, the jury’s award of $6 million in compensatory damages to Plaintiff for the loss of her mother was excessive. Although the evidence established that Plaintiff and her mother had a very close and unique relationship, at the time of Ms. Thurston’s illness and death, Plaintiff was not living with Ms. Thurston and was not financially or otherwise dependent on her. Instead, Plaintiff was married with two children of her own and Ms. Thurston was living with her long-time partner. Although Plaintiff took her mother to many of her appointments and was devastated by her decline and subsequent death, the relationship between an adult child living independent of their parent is simply not the type of relationship which can justify the magnitude of the Plaintiffs compensatory damage award. Accordingly, we hold that the trial court abused its discretion when it denied RJR’s motion for remittitur or a new trial.
“Because the award of compensatory damages must be vacated, we also vacate the award of punitive damages.” Webb, 93 So.3d at 339-40.

b) Closing Comments During the Punitive Phase

“A trial court’s denial of a motion for mistrial and a motion for new trial based on improper closing arguments are reviewed for abuse of discretion.” Whitney v. Milien, 125 So.3d 817, 818 (Fla. 4th DCA 2013).
A recent line of cases from this Court establishes that “[i]t is improper for counsel to suggest in closing argument that a ‘defendant should be punished for contesting damages at trial’ or that defending a ‘claim in court’ is improper.” Allstate Ins. Co. v. Marotta, 125 So.3d 956, 960 (Fla. 4th DCA 2013) (quoting Intramed, Inc. v. Guider, 93 So.3d 503, 507 (Fla. 4th DCA 2012)). In the tobacco context, we have *702 held that if preserved, comments disparaging a tobacco company for failing to take responsibility warrant a new trial. Compare Philip Morris USA, Inc. v. Tullo, 121 So.3d 595 (Fla. 4th DCA 2013) (comments disparaging the tobacco company for defending itself and for failing to take responsibility for its actions were improper but did not warrant a new trial because they were unpreserved), with Cohen v. Philip Morris USA, Inc., 203 So.3d 942, 949, 41 Fla L. Weekly D2073, D2075, 2016 WL 4649570 (Fla. 4th DCA Sep. 7, 2016) (court did not abuse its discretion in granting a new trial based on objected to closing comments by plaintiff concerning the tobacco company’s failure to take responsibility), and R.J. Reynolds Tobacco Co. v. Calloway, 201 So.3d 753, 759 (Fla. 4th DCA 2016) (preserved objections to tobacco plaintiff’s “failure to accept responsibility” comments during closing comments mandated reversal).
During its Phase II closing, Plaintiffs counsel made several arguments focusing on RJR’s failure to accept responsibility. These comments were similar to those identified as improper in Tullo, Cohen, and Calloway. However, although indistinguishable in substance, the comments ai*e distinguishable in their context.
Explaining the reason why such comments are improper, the Intramed Court wrote:
The closing argument shifted the focus of the case from compensating the plaintiff to punishing the defendant. The life expectancy of the plaintiff and the cost of her future care were legitimate issues for the defense. The purpose of damages here was to compensate, not to make the defendant care, ‘take responsibility,’ or say it was sorry. Counsel’s arguments improperly suggested that the defendant should be punished for contesting damages at trial and that its defense of the claim in court was improper.
93 So.3d 503 at 507 (emphasis added).
Indeed, in Tullo, Cohen, and Calloway, the problematic comments were all made during the phase of the trial wherein the jury was asked to consider the issue of compensatory damages. On appeal in both Cohen and Calloway, the plaintiffs argued that the comments were permissible because, in addition to determining the proper amount of compensation, the jury, was asked to determine if punitive damages were warranted. We rejected these arguments on the grounds that the comments, while perhaps relevant to the issue of punitive damages, may have tainted the jury’s compensatory liability determination. Cohen, _ So.3d at _, 41 Fla. L. Weekly at D2073; Calloway, 201 So.3d at 760 (explaining that “[ajlthough plaintiff asserts that the punitive damages claim made these comments appropriate because the issue of entitlement to such damages was at issue [in the phase wherein the comments were made], so too was the claim for compensatory damages”). See also R.J. Reynolds Tobacco Co. v. Gafney, 188 So.3d 53, 58 (Fla. 4th DCA 2016) (holding that “when both [punitive and compensatory] claims are at issue, a plaintiff may not utilize ‘send a message’ and conscience of the community arguments when discussing whether the plaintiff should be compensated, due to the potential for the jury to punish through the compensatory award”).
In this case, the challenged comments were made after the jury determined the issue of compensatory damages and during the phase wherein the jury was charged with the sole task of determining the proper amount of punitive damages. Thus, the concerns espoused by Intramed, Tullo, Cohen, and Calloway are simply not present in this case. As such, the fact that RJR *703 failed to acknowledge its conduct was wrongful was a proper topic for discussion. See Lorillard Tobacco Co. v. Alexander, 123 So.3d 67, 81 (Fla. 3d DCA 2013) (“Unlike compensatory damages, which are intended to redress a concrete loss, punitive damages, like criminal penalties, are intended to punish past conduct and to deter future behavior.”).

Conclusion

We reverse both the compensatory and the punitive damage awards and remand the case with directions that the trial court grant the motion for remittitur or order a new trial on damages only. We affirm the judgment in all other respects. However, in the event of a new trial, Plaintiff is entitled to seek punitive damages on her product defect and negligence claims pursuant to Soffer v. R.J. Reynolds Tobacco Co., 187 So.3d 1219, 1227 (Fla.2016).

Reversed and remanded.

CIKLIN, C.J., and MAY J., concur.

. Engle v. Liggett Grp., Inc., 945 So.2d 1246 (Fla.2006).