Damoorgian, J.
In this Engle[1] progeny case, R.J. Reynolds Tobacco Company (“RJR”) appeals the final judgment entered in favor of Jan Grossman as Representative of the estate of his deceased wife, Laura Grossman (“Plaintiff’). RJR argues that the court erred by: 1) denying its motion for a mistrial based on an alleged error during jury selection; 2) denying its motion for a new trial based on comments made by Plaintiffs counsel during closing arguments; 3) refusing to reduce the jury’s compensatory damages award based on the Decedent’s comparative fault; 4) denying its motion to remit the jury’s compensatory and punitive awards; and 5) applying the Engle findings in violation of R JR’s due process rights. We reverse and remand with instructions that the court reduce the jury’s compensatoiy award in proportion with the jury’s comparative fault finding and affirm in all other respects for the reasons set forth below.
Background
This is the second time that this case is before this Court. The lawsuit began when Plaintiff sued RJR asserting that his late wife was a member of the Engle class because she died from lung cancer caused by her addiction to cigarettes. In his suit, Plaintiff alleged causes of action for strict liability, fraud by concealment, conspiracy to commit fraud by concealment, negligence, breach of express warranty, and breach of implied warranty.
The case initially went to trial in February of 2010, but ended in a mistrial. It went to trial for the second time in April of 2010 and was broken down into three phases. In Phase I, the jury was asked to determine if the Decedent was a member of the Engle class by virtue of her addiction to cigarettes. It found that she was. In Phase II, the jury was asked to determine liability, compensatory damages, and entitlement to punitive damages. At the end of Phase II, the jury found for Plaintiff only on his defective design count. Because the jury did not find for Plaintiff on any of his intentional tort claims, the case did not proceed to the third phase, which would have concerned the proper amount of punitive damages.
RJR appealed and Plaintiff cross-appealed the results of the second trial. We reversed and remanded for a new Phase II trial based on the trial court’s erroneous inclusion of Plaintiff as a defendant on the verdict form. R.J. Reynolds Tobacco Co. v. Grossman, 96 So.3d 917 (Fla. 4th DCA 2012). We did not disturb the jury’s Phase I class membership verdict. Id.
The third trial resumed at the Phase II stage (liability, compensatory damages and entitlement to punitive damages) with the *225 possibility for a Phase III (amount of punitive damages), depending on the verdict.
The evidence presented at trial established that the Decedent began smoking in the mid-1970s when she was a teenager and remained a heavy smoker for the rest of her life. At the age of thirty-six, the Decedent was diagnosed with lung cancer. At that time, she had been married to Plaintiff for over ten years and they had two young children, a daughter, who was nine, and a son, who was one. The Decedent’s condition deteriorated rapidly as her cancer spread throughout her body. The Decedent died at home at the age of thirty-eight, eighteen months after she was first diagnosed with lung cancer. Her children were eleven and almost three when she passed away, leaving Plaintiff a forty-five year old widower and single dad.
The jury found for Plaintiff on all counts and awarded him $3.5 million in compensatory damages as well as the Decedent’s medical and funeral expenses. It awarded the Decedent’s daughter $7.5 million and her son $4 million. The jury apportioned RJR’s percentage of the fault at 75% and Decedent’s at 25%. It also found that punitive damages were warranted against RJR and following a Phase III punitive damages trial, awarded Plaintiff an additional $22.5 million. After the trial, RJR moved for a new trial based on a jury selection issue and certain comments made by Plaintiff during closing. It also moved for remittitur of the jury’s compensatory and punitive damages awards. The trial court denied all of RJR’s post-trial motions and entered judgment in favor of Plaintiff in the amount of $37,851,701.09.
Analysis

Jury Selection Issue

During jury selection, the court, over RJR’s objection, considered and granted two cause challenges made by Plaintiff after RJR used two of its peremptory strikes. RJR argues that this was reversible error. Recognizing case law which provides that a trial court does not have the discretion to “infringe upon a party’s right to challenge any juror, either peremptorily or for cause, prior to the time the jury is sworn,” Jackson v. State, 464 So.2d 1181, 1183 (Fla. 1985), RJR concedes that the court was permitted to consider Plaintiff’s cause challenges, but asserts that the court was required to restart the peremptory process after striking any jurors for cause. We disagree.
Generally speaking, a trial court is afforded wide discretion in determining the time and manner of challenging and swearing jurors. Lottimer v. N. Broward Hosp. Dist., 889 So.2d 165, 166-67 (Fla. 4th DCA 2004). To that end, there is nothing in the Rule of Civil Procedure governing the use of challenges during jury selection which mandates the procedure advocated by RJR. Fla. R. Civ. P. 1.431(c)-(e). We decline to judicially create such a rule.

Closing Comments

RJR made over forty objections throughout Plaintiff’s closing and rebuttal closing arguments. About half of the objections were based on its position that Plaintiff was improperly disparaging RJR for contesting damages at trial and for defending itself in Plaintiffs lawsuit. In R.J. Reynolds Tobacco Co. v. Calloway, 201 So.3d 753, 759-65 (Fla. 4th DCA 2016), this Court held that such comments, if preserved, may merit a new trial. Based on Calloway, RJR asserts that it is entitled to a new trial. Plaintiff counters that RJR did not properly preserve its argument for appeal and that any error does not rise to the level of fundamental error. We agree with Plaintiff on this point.
*226 The contemporaneous objection rule is well established in Florida in regard to argument of counsel. There must be an objection at the time the remarks are made. See, e.g., Philip Morris USA, Inc. v. Tullo, 121 So.3d 595, 600 (Fla. 4th DCA 2013). “Whether a party is required to seek a mistrial in this situation turns on whether the trial court sustained or overruled the objection. If a trial court finds a comment improper and sustains a party’s contemporaneous objection, the party must move for mistrial if he wishes to preserve his objection. If a contemporaneous objection is overruled, however, there is no reason for a party to seek a mistrial.” Newton v. S. Fla. Baptist Hosp., 614 So.2d 1195, 1196 (Fla. 2d DCA 1993) (internal citations omitted). Motions for mistrial, if required, must be made, by the end of closing arguments at the latest. Murphy v. Int’l Robotics Sys., Inc., 710 So.2d 587, 589 (Fla. 4th DCA 1998), approved 766 So.2d 1010 (Fla. 2000).
Our careful review of the record reflects that the court sustained all of RJR’s objections during closing to comments which were improper under Callo-way. Therefore, in order to preserve its argument for appeal, RJR was required to timely move for a mistrial. Here, RJR did not move for a mistrial based on Plaintiffs closing comments until after the jury was midway through its deliberations. Accordingly, this Court may only review the court’s denial of RJR’s motion for a new trial based on Plaintiffs closing arguments for fundamental error.
In Murphy v. International Robotic Systems, Inc., 766 So.2d 1010, 1028 (Fla. 2000), our supreme court explained:
The purpose of closing argument is to help the jury understand the issues in a case by applying the evidence to the law applicable to the case. Attorneys should be afforded great latitude in presenting closing argument, but they must confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence. Moreover, closing argument must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law.
(internal quotation marks and citations omitted).
When allegedly improper comments during closing are only preserved for fundamental error, the appellant must show: 1) that the comments were improper; 2) that the argument was harmful; 3) that the argument was incurable; and 4) that “the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.” Id. at 1028-30. See also Aarmada Prot. Sys. 2000, Inc. v. Yandell, 73 So.3d 893, 900 (Fla. 4th DCA 2011). It is important to note that the Murphy court purposely made this test very difficult to meet, noting that while it was not “absolutely ‘clos[ing] the door’ on appellate review of unpreserved challenges to closing argument, we have come as close to doing so as we believe consistent with notions of due process which deserve public trust in the judicial system.” Murphy, 766 So.2d at 1031. As we did in another tobacco case, Tullo, 121 So.3d at 601-02, we hold that the unpreserved but improper comments in the present case did not create a fundamental error.

Comparative Fault

RJR argues that the court erred in refusing to reduce the jury’s compensatory damages by the Decedent’s comparative fault. The court’s refusal was based on its finding that section 768.81(4), Florida Statutes, (2013) barred application of the Dece *227 dent’s comparative fault to reduce damages because the jury found that RJR committed an intentional tort. During the pendency of this appeal, this Court held that at their “core,” Engle progeny suits are “products liability suit[s] based on conduct grounded in negligence.” R.J. Reynolds Tobacco Co. v. Schoeff, 178 So.3d 487, 496 (Fla. 4th DCA 2015). Accordingly, “application of comparative negligence to [a tobacco] plaintiffs fraud-based claims” is always required. Calloway, 201 So.3d at 767. Therefore, the trial court was required to reduce the jury’s compensatory damages award by its comparative fault finding.

Remittitur

a) Compensatory Award to the Decedent’s Children
RJR argues that the trial court erred in denying its motion to remit the jury’s compensatory awards to the Decedent’s daughter ($7.5 million) and son ($4 million) because they are excessive and out of line with comparable cases. We disagree.
Pursuant to Florida’s remittitur and ad-ditur statute, section 768.74 of the Florida Statutes, the trial court has the responsibility to review the amount of an award and determine if it is excessive or inadequate “in light of the facts and circumstances which were presented to the trier of fact.” § 768.74(1), Fla. Stat. (2013). “If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.” § 768.74(2), Fla. Stat. (2013). In making its determination, the trial court is guided by the following statutory considerations:
(a)Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
§ 768.74(5), Fla. Stat. (2013).
As we recently explained in considering the denial of a motion to remit an Engle case compensatory damages award:
Compensatory damages are intended to redress or compensate for a concrete loss. Where the loss is of a noneconomic nature, however, such as for mental pain and anguish and for loss of consortium, the valuation is inherently difficult. Because no formula can determine the value of such a loss, great deference is given the jury’s estimation of the monetary value of the plaintiffs mental and emotional pain and suffering. The fact that a damage awárd is large does not in itself render it excessive nor does it indicate that the jury was motivated by improper consideration in arriving at the award. Rather, a compensatory damage award is only excessive if it is so large that it exceeds the maximum limit of a reasonable range. In reviewing an award of damages for excessiveness, the court may consider the philosophy and general trend of decisions in comparable cases.
*228 R.J. Reynolds Tobacco Co. v. Odom, 210 So.3d 696, 698-99, 2016 WL 6992162, at *2 (Fla. 4th DCA 2016) (internal quotation marks and citations omitted).
“When it comes to wrongful death awards, including those in the Engle context, courts have drawn a distinction between compensatory damages awarded to surviving spouses and to adult children.” Id. at 699, *3 (emphasis added). RJR primarily relies on adult surviving children cases in support of its argument that the awards to the Decedent’s children are excessive.
In R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331, 337 (Fla. 1st DCA 2012), the First District reversed an $8 million award to an adult surviving child of a cigarette smoker on the grounds that it was excessive as compared to other similar Engle awards. Citing to Webb, in Philip Morris USA Inc. v. Putney, 199 So.3d 465, 470 (Fla. 4th DCA 2016), this Court considered whether the impact of a decedent’s illness and subsequent death on her adult, independently living children was sufficient to justify a $5 million award to each child. We held that it was not, concluding that awards of such magnitude are reserved for cases involving “much closer relationships between the parties and the decedents during the decedent’s illness.” Id. at 471. Most recently, in Odom, we held that:
Read together, Webb and Putney establish that no matter how strong the emotional bond between an adult child and a decedent parent may be, an adult child who lives independent of the parent during the parent’s smoking related illness and death is not entitled to multi-million dollar compensatory damages award, even if the child was involved in the facilitation of the parent’s treatments and suffered tremendous grief over the loss of the parent.
Odom, 210 So.3d at 701, 2016 WL 6992162, at *4.
However, none of these cases provide guidance as to the proper amount of compensation due to a surviving child who was still a child at the time of his or her parent’s death. Indeed, the logic employed by the aforementioned cases in finding multi-million dollar awards to independent, adult children too large supports the propriety of a large award to dependent, young children. As the Webb court made quite clear, the proper measure of damages should be based on “evidence of [the decedent’s] illness, subsequent death, and the noneconomic consequences of the death itself.” 93 So.3d at 339. This amount will obviously be lai-ger if the surviving family member was “wholly dependent on [the decedent’s] companionship, instruction and guidance” at the time the decedent died. Id.
There are no published Engle opinions discussing the proper measure of damages where the smoker’s surviving children were minors when the smoker died. Indeed, there are few published Florida opinions discussing the proper amount of compensation due to a minor child who wrongfully loses a parent. One such case is Citrus County v. McQuillin, 840 So.2d 343, 347 (Fla. 5th DCA 2003). There, the court affirmed a $4.4 million pain and suffering and loss of parental companionship award made to the decedent’s son, who was seven years old at the time of his mother’s death. Id. In doing so, the court concluded by writing: “Who can place a dollar value on a human life, measured by the loss and grief of a loved one? That difficult decision is generally one for the jury or fact finder, not the appellate court.” Id. at 348.
Here, the Decedent’s daughter was only nine years old when her mother was diagnosed with lung cancer and the Decedent’s *229 son was an infant. The evidence presented at trial established that the Decedent’s illness and death had a devastating effect on the children. The daughter retained vivid memories of her mother’s illness and decline. She testified that she remembered wanting to do nothing more than hug and cuddle with her mother, but that her mother was in so much pain that the daughter could not even lay next to her. The daughter testified that she felt robbed by her mother’s death, and often thinks about the relationship they would have had and what her mother’s role would have been in her life.
The Decedent’s son testified that his only true memory of his mother was watching the paramedics take her dead body out of their home in a body bag. The son lamented not having more time with his mother and testified that it negatively affected him for the rest of his life. The son suffered from abandonment anxiety as a small child, and as he got older, exhibited behavioi'al problems. Plaintiff testified that the son could not comprehend that his mother died and would often cry out for “mommy.” The children’s eventual stepmother also provided accounts of the effect the Decedent’s death had on the children. For example, she testified that after seeing a lost-pet flyer hanging on a tree, the Decedent’s son drew a crayon depiction of his mom and taped it on a tree hoping that someone would “find” his mother. Another time, he asked the Santa at the mall for his mother back.
The evidence at trial established that two young children who were wholly dependent on their parents for support, guidance, and care not only lost their mother during their formative years, but watched her suffer and waste away as her body was ravaged by cancer. Under these circumstances, the jury’s $7.5 and $4. million awards to the Decedent’s son and daughter do not shock the judicial conscience. Accordingly, the trial court did not err in denying RJR’s motion for remittitur,
b) Punitive Damages
RJR also argues that the court erred in failing to remit the jury’s punitive damages award because it was unconstitutionally excessive. We affirm the trial court’s decision as the jury’s award ($22.5 million in punitive damages in light of a $13.5 million compensatory award) falls under the constitutionally acceptable range as established by other Engle decisions. R.J. Reynolds Tobacco Co. v. Buonomo, 138 So.3d 1049, 1052 (Fla. 4th DCA 2013) (holding that a jury’s initial $25 million punitive award as compared to a $5,235,000 compensatory award was not so excessive as to violate due process); Lorillard Tobacco Co. v. Alexander, 123 So.3d 67, 81-82 (Fla. 3d DCA 2013) (holding that a $25 million punitive damages award which bore a 2.5 to 1 ratio to a remitted compensatory damages award of $10 million dollars was not unconstitutionally excessive); R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1072 (Fla. 1st DCA 2010) (holding that a $25 million punitive damages award that bore a 7.58 to 1 ratio to the $3.3 million compensatory damages award was permissible).

Due Process

Lastly, RJR argues that the trial court’s ruling allowing Plaintiff to use the Engle phase I findings to establish elements of his claims violates due process. As RJR recognizes, the Florida Supreme Court has rejected this argument. Philip Morris USA, Inc. v. Douglas, 110 So.3d 419 (Fla. 2013).
Conclusion
We affirm the trial court’s denial of RJR’s motions for a new trial and for remittitur, but hold that the trial court erred in failing to reduce the jury’s com *230 pensatory damages award by its comparative fault finding. Accordingly, we remand the case for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

Conner, J., and Moyle, Paul 0., Associate Judge, concur.

. Engle v. Liggett Grp., Inc., 945 So.2d 1246 (Fla. 2006).