DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellant,

v.

**JACQUELINE P. BURGESS,** as Personal Representative of the Estate of
JOHNNY BURGESS,
Appellee.

No. 4D18-3014

[ February 26, 2020 ]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Larry Schack, Judge; L.T. Case No. 562009CA006060.

Marie A. Borland and Troy A. Fuhrman of Hill Ward Henderson, Tampa, Jason T. Burnette of Jones Day, Atlanta, Georgia, and Charles R.A. Morse of Jones Day, New York, New York, for appellant.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, Randy Rosenblum of Dolan Dobrinsky Rosenblum, Miami, and Gary M. Paige and Cassandra Lombard of Gordon & Partners, Davie, for appellee.

TAYLOR, J.

In this *Engle*[1]-progeny action, R.J. Reynolds ("RJR") appeals a final judgment awarding $3,000,000 in compensatory damages to the plaintiff, Jacqueline Burgess, as personal representative of the Estate of her deceased husband, Johnny Burgess. We affirm on all issues but write to address RJR's argument that it is entitled to judgment in its favor, or alternatively a new trial, on the concealment and conspiracy claims. We also certify conflict with two decisions of the First District Court of Appeal.

Mr. Burgess was born in 1934 and began smoking at the age of 14. He married the plaintiff in 1953. He had little formal education and was unable to read.

As a teenager, Mr. Burgess smoked a pack per day of Pall Mall

---

[1] *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

cigarettes, which were unfiltered. A few years after marrying the plaintiff, he switched to Winston filtered cigarettes because he believed they were safer. He heard from friends that Winston cigarettes were safer because they had a filter.

Mr. Burgess once cut open the filter on a used Winston cigarette to show the plaintiff "a lot of brownish-looking stuff." He told the plaintiff: "See all this stuff that's supposed to be going in me is in the filter. The filter is catching it." RJR had advertised Winston cigarettes on the Flintstones, a show that Mr. Burgess watched, as having a "pure white" filter.

Beginning in the 1970s, Mr. Burgess made many unsuccessful attempts to quit smoking. He did not know anything about the tobacco industry's manipulation of the level of nicotine in cigarettes to deliver nicotine kicks. The evidence at trial showed that when smokers understand nicotine addiction, they are better able to stop smoking.

In 1982, Mr. Burgess was able to quit smoking permanently. In 1993, however, he was diagnosed with lung cancer. He died later that year at the age of 59, leaving the plaintiff a widow after 40 years of marriage.

The plaintiff filed this *Engle*-progeny lawsuit against RJR. The case proceeded to a typical *Engle*-progeny trial, where the jury heard extensive evidence about the tobacco industry's pervasive advertising (including on television shows that Mr. Burgess watched) and its creation of a false controversy about the risks of smoking.

After the plaintiff rested her case, RJR moved for a directed verdict on the fraudulent concealment and conspiracy claims. The trial court reserved ruling on the motion.

The trial court declined to give RJR's proposed jury instructions on the intentional tort claims, which would have required the jury to find that Mr. Burgess detrimentally relied upon a *statement* that concealed material information concerning the health effects or addictive nature of smoking.

The jury found that (1) Mr. Burgess's addiction to cigarettes was a legal cause of his cancer and death, (2) Mr. Burgess's own negligence was a contributing legal cause of his cancer and death, (3) 20% of the fault should be charged to Mr. Burgess, (4) RJR was liable on the concealment and conspiracy claims, (5) the plaintiff sustained $3,000,000 in compensatory damages, and (6) punitive damages were not warranted against RJR.

Because the plaintiff prevailed on the intentional tort claims, the trial court entered a final judgment awarding the plaintiff $3,000,000. RJR filed a renewed motion for directed verdict or alternatively for a new trial. The trial court denied the motion. RJR then filed this appeal, raising the same arguments it raised below.

We first address RJR's argument that the trial court should have entered judgment in its favor on the concealment and conspiracy claims because the plaintiff failed to present any individualized evidence of detrimental reliance. We disagree with this argument.

The standard of review of a trial court's ruling on a motion for directed verdict is de novo. *Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 10 So. 3d 202, 205 (Fla. 4th DCA 2009).

"*Engle*-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment claims." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 698 (Fla. 2015).

In *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010), the First District addressed the argument that an *Engle*-progeny plaintiff "failed to prove the reliance element of her fraudulent concealment claim because she put on no direct evidence showing [the decedent] relied on information put out by the tobacco companies omitting scientific findings on the harmful effects of smoking." In rejecting this argument, the *Martin* court explained that "the record contains abundant evidence from which the jury could infer [the decedent's] reliance on pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health." *Id.*

Following *Martin*, this court and others have concluded that a jury in an *Engle*-progeny case may infer reliance based upon evidence of the smoker's own history coupled with the tobacco industry's pervasive advertising and creation of a false controversy about the risks of smoking, without the necessity of proving that the smoker relied on any specific statement. *See Philip Morris USA Inc. v. Putney*, 199 So. 3d 465, 470 (Fla. 4th DCA 2016) ("Similar to the situation in *Martin*, the record in this case contains sufficient evidence from which the jury could decide that Margot relied (1) on pervasive, misleading advertising campaigns for cigarettes in general, and (2) on the false controversy created by the tobacco industry

3

during the years she smoked (aimed at creating doubt among smokers that cigarettes were hazardous to health) without the necessity of proving Margot relied on any specific statement from a specific co-conspirator."), *disapproved of on other grounds by Odom v. R.J. Reynolds Tobacco Co.*, 254 So. 3d 268 (Fla. 2018); *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 947–48 (Fla. 4th DCA 2012) (explaining that it was a jury question as to whether the smoker "justifiably relied on the false controversy created by the tobacco industry," even though the smoker admitted that she was aware by 1970 that smoking could be dangerous to her health, and that it was "not necessary that a direct statement be made to the representee in order to give rise to the right to rely upon the statement, for it is immaterial whether it passes through a direct or circuitous channel in reaching him"), *disapproved of on other grounds by Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681 (Fla. 2015); *Evers v. R.J. Reynolds Tobacco Co.*, 195 So. 3d 1139, 1141 (Fla. 2d DCA 2015) (holding that RJR was not entitled to a directed verdict where it failed to "conclusively" demonstrate that the smoker was not "reassured by the controversy the tobacco companies generated to keep people smoking"); *Philip Morris USA, Inc. v. Hallgren*, 124 So. 3d 350, 353 (Fla. 2d DCA 2013) (applying *Martin* and explaining that "the element of reliance for fraudulent concealment may be inferred from evidence of the pervasive and misleading advertising campaigns perpetuated by the Tobacco Companies"); *see also Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1108 (11th Cir. 2018) ("Florida courts have consistently held that *Engle*-progeny plaintiffs are not required to show reliance on a specific statement.").

Subsequently, however, the First District issued a 2-1 decision in *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536 (Fla. 1st DCA 2018), which appears to be in tension with its earlier *Martin* decision. The *Whitmire* majority acknowledged *Martin*'s holding that "detrimental reliance on false statements can be proved through inference," but nonetheless ruled that the circumstantial evidence necessary to prove such an inference "must establish individualized reliance by the plaintiff, and this cannot be shown through mere presentation of general evidence of the plaintiff's life and behavior, where, as here, that evidence gives no indication that the plaintiff relied on any false information disseminated by the tobacco companies." *Id.* at 540–41.

Here, we conclude that the trial court properly denied RJR's motion for directed verdict. The plaintiff presented sufficient evidence from which the jury could infer that Mr. Burgess detrimentally relied upon the tobacco industry's pervasive advertising and creation of a false controversy about the risks of smoking. Mr. Burgess did not need to prove that he relied on any specific statement from the tobacco industry. Because the evidence

4

showed that the tobacco industry delivered a fraudulent message to the smoking public, it was "immaterial whether it passe[d] through a direct or circuitous channel in reaching" Mr. Burgess. *See Naugle*, 103 So. 3d at 946–47.

In any event, the tobacco industry's use of the term "filter" was itself a deceptive statement, as the filters did nothing to make cigarettes healthier. The evidence showed that the tobacco companies aggressively promoted filtered cigarettes to allay the health fears of smokers. The tobacco industry also designed filters to change color when exposed to smoke, something Mr. Burgess himself found significant in forming his belief that filtered cigarettes were safer. Thus, at a minimum, we conclude that individualized reliance can be inferred from Mr. Burgess's belief that filtered cigarettes were safer.

However, because the First District has found substantially similar evidence of detrimental reliance to be insufficient as a matter of law, we certify conflict with *Whitmire*.

RJR next argues that the trial court erred by failing to instruct the jury that it had to find that Mr. Burgess relied on a statement disseminated by RJR or a co-conspirator for the plaintiff to prevail on her concealment and conspiracy claims. We disagree.

"A decision to give or withhold a jury instruction is to be reviewed under the abuse of discretion standard of review." *Barton Protective Servs., Inc. v. Faber*, 745 So. 2d 968, 974 (Fla. 4th DCA 1999).

To demonstrate that a trial court's refusal to give a requested instruction was error, a party must show three things: (1) the requested instruction was an accurate statement of the law; (2) the facts in the case supported giving the instruction; and (3) the instruction was necessary for the jury to properly resolve the issues in the case. *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 517 (Fla. 2015).

In this case, the trial court did not abuse its discretion in refusing to give RJR's requested instructions on the concealment and conspiracy claims. RJR's requested instructions were unnecessary, because the trial court's instructions adequately apprised the jury of the element of reliance.[2] Our court's precedents do not require the jury to be instructed

---

[2] As to the fraudulent concealment claim, the trial court instructed the jury that the issue for its determination was whether Mr. Burgess "reasonably relied to his detriment on the concealment or omission of material information, not otherwise

that the smoker relied on "a statement."  *See Philip Morris USA Inc. v. McCall*, 234 So. 3d 4, 14 (Fla. 4th DCA 2017) (explaining that a fraudulent concealment claim in an *Engle* case need not be limited to reliance on "a statement," but acknowledging that "an instruction referencing reliance on 'a statement' is not incorrect as a matter of law"); *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753, 766 (Fla. 4th DCA 2016) ("The instruction need not include reliance on 'a statement' unless the facts of the case warrant it.  What is necessary is that an instruction properly tailored to the facts of the case apprise the jury of the essential element of 'reliance' in a fraudulent concealment claim."); *see also Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 443 (Fla. 2d DCA 2017) (determining that "a special jury instruction demanding reliance on 'a statement' was not required in this case")[3]; *but see R.J. Reynolds Tobacco Co. v. Prentice*, 1D17-2104, 2019 WL 5432089, at *1 (Fla. 1st DCA Oct. 24, 2019) (relying upon *Whitmire* and holding that the trial court abused its discretion in refusing to give a special jury instruction requiring the jury to find whether the decedent detrimentally relied on "a statement" that concealed or omitted material information).

Accordingly, we affirm on all issues, but certify conflict with *Whitmire* and *Prentice*.

*Affirmed; conflict certified.*

CIKLIN J., concurs.

---

known or available, concerning the health effects or addictive nature of cigarettes or both by [RJR]."  As to the conspiracy claim, the trial court instructed the jury that the issue for its determination was whether Mr. Burgess "reasonably relied to his detriment on an act by any or all of the co-conspirators in furtherance of the agreement to conceal or omit information not otherwise known concerning the health effects of smoking or the addictive nature of smoking cigarettes or both."  As to both claims, the trial court instructed the jury that Mr. Burgess's reliance had to be a legal cause of his primary lung cancer and death.

[3] However, the *Duignan* court found that the instruction the trial court gave— namely, that the jury could find the reliance element satisfied if the evidence showed that the decedent "reasonably relied to his detriment that [PM and Reynolds] would not conceal or omit disclosure of such material information"— was both inaccurate and misleading, as the instruction allowed the jury to "find reliance if it found that [the decedent] generally relied on the tobacco companies to disclose all material information, without requiring it to find that the material information the tobacco companies concealed or omitted was in fact important to his decisions to begin or continue smoking."  *Id.*  By contrast, the instructions in this case do not suffer the same defect identified in *Duignan*.

6

KUNTZ, J., dissents with opinion.


KUNTZ, J., dissenting.

I would reverse the circuit court's judgment because there was no evidence presented to show Mr. Burgess relied on statements or actions of R.J. Reynolds Tobacco Company.[4]

When the Florida Supreme Court decertified the *Engle* class, it did so "because individualized issues such as legal causation, comparative fault, and damages predominate[d]." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1268 (Fla. 2006) (citing Fla. R. Civ. P. 1.220(b)(3)). It left for a "subsequent jury . . . individual questions of reliance and legal cause." *Id.* at 1255.

More recently, it explained that "*Engle*-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment claims." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 698 (Fla. 2015). The Florida Supreme Court requires an *Engle*-progeny plaintiff to prove reliance, and that requires more than the mere fact that a plaintiff used a defendant's product.

Here, there was no evidence of reliance. No witness testified that Mr. Burgess ever said he had even seen a tobacco advertisement.[5] One witness testified that Mr. Burgess often watched the Flintstones, and there was evidence the tobacco companies sometimes advertised during that show, but there was no testimony that Mr. Burgess ever saw one of the advertisements. And while he believed filtered cigarettes were safer, he believed that because his friends told him so. Mrs. Burgess testified that "[m]any of his friends said [ ] Winstons [were] safer because they had the filter," but she did not know why his friends thought a filtered cigarette was safer.

At oral argument, counsel for Mrs. Burgess argued that we can infer a connection between the tobacco companies' statements and Mr. Burgess's decision to use tobacco products. I agree that circumstantial evidence can

---

[4] Reversal on this issue would render RJR's alternative argument relating to the jury instructions moot.

[5] The parties agree that Mr. Burgess did not read a statement that could establish reliance.

establish reliance.  *See R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 540 (Fla. 1st DCA 2018) (citing *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010)).  "But circumstantial evidence cannot merely raise an unfounded suspicion or legally sufficient speculation that allows an intentional-tort claim to be submitted to a jury." *Id.*

Instead, there must be something to show Mr. Burgess acted differently because of the tobacco companies' actions.  *See Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 443 (Fla. 2d DCA 2017) (citing *Raymond, James & Assocs., Inc. v. Zumstorchen Inv., Ltd.*, 488 So. 2d 843, 845–46 (Fla. 2d DCA 1986)).  In other words, the record must contain something to show reliance.  *Philip Morris USA Inc. v. Putney*, 199 So. 3d 465, 470 (Fla. 4th DCA 2016) ("the record in this case contains sufficient evidence from which the jury could decide that Margot relied" on statements from the tobacco companies), *disapproved of on other grounds by Odom v. R.J. Reynolds Tobacco Co.*, 254 So. 3d 268 (Fla. 2018).

But this record did not show evidence of reliance.  There was no evidence that Mr. Burgess relied on anything said or done by the tobacco companies.  Nor was there testimony that Mr. Burgess ever even saw a misleading statement.  As a result, the evidence did not establish reliance.

Finally, I note that this is not a novel issue.  In the "first of the post-*Engle* cases to reach this court," we noted in a footnote that "RJR moved for a directed verdict on the fraudulent concealment and conspiracy claims because Mrs. Brown failed to present evidence of detrimental reliance." *R.J. Reynolds Tobacco Co. v. Brown*, 70 So. 3d 707, 709, 711 n.6 (Fla. 4th DCA 2011).  The circuit court in *Brown* granted the motion.  *Id.* at 711 n.6.  That judge got it right, and so should we.

I would reverse the circuit court's judgment and remand for the entry of a directed verdict in RJR's favor on the concealment and conspiracy claims.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***