# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1986
_____

R.J. REYNOLDS TOBACCO
COMPANY,

    Appellant,

    v.

JAMES WHITMIRE, as Personal
Representative of the Estate of
Evelyn Whitmire,

    Appellee.

_____


On appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

December 18, 2018


B.L. THOMAS, C.J.

In this *Engle*-progeny case,[1] Appellant challenges the trial court's denial of its motion for directed verdict, arguing that Appellee failed to prove individual detrimental reliance, and thus failed to prove fraudulent concealment and conspiracy. Because *Engle* plaintiffs must prove detrimental reliance on fraudulent statements, and no evidence here supports such reliance, we hold that the trial court erred in denying Appellant's motion for a directed verdict.

---

[1] *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

1

Appellee's wife (the decedent) died in 1995 after being diagnosed with lung cancer. Appellee, as the personal representative of her estate, brought wrongful death claims on her behalf against Appellant, arguing strict liability, negligence, fraudulent concealment, and civil conspiracy to fraudulently conceal. Appellee claimed the decedent was a member of the class prospectively decertified in *Engle*.

The decedent started smoking cigarettes when she was about 14 years old, and normally smoked one or two packs a day. Appellee and the decedent smoked Winston filtered cigarettes, introduced by Appellant in 1954, and later switched to Salem menthol-flavored filtered cigarettes.

The decedent made multiple unsuccessful attempts to quit smoking cigarettes. She did not quit smoking until after her cancer diagnosis, months before her death.

Appellee presented expert testimony that large tobacco companies in the United States, including Appellant, made fraudulent statements regarding the hazards of smoking on December 4th, 1953 and thereafter. Appellant moved for a directed verdict, arguing that Appellee presented no evidence connecting these statements to the decedent's smoking behavior. Appellee argued that, under *R.J. Reynolds Tobacco Company v. Martin*, 53 So. 3d 1060 (Fla. 1st DCA 2010), he was not required to prove the decedent relied on specific statements by Appellant. The trial court denied Appellant's motion for directed verdict.

The jury found that the decedent was addicted to cigarettes containing nicotine, and that such addiction was the cause of her lung cancer and death. The jury apportioned 33% of the responsibility of her death to the decedent, and 67% of the responsibility to Appellant, awarding $3 million in damages to Appellee for the loss of companionship and pain and suffering caused by the decedent's death.

After trial, Appellant renewed its motions for directed verdict, asserting that no testimony connected the decedent's smoking to her reliance on any false or misleading statements by any tobacco company. The trial court denied Appellant's motion. The court entered final judgment for the full $3 million

compensatory award, with no reduction based on the decedent's 33% comparative fault.[2]

The parties do not dispute that this is an *Engle*-progeny case. *Engle* was a class action brought against several tobacco companies, including Appellant, on behalf of all Florida-resident smokers who developed smoking-related illnesses, including lung cancer, caused by an addiction to nicotine. 945 So. 2d at 1256. The trial was divided into three "phases," with Phase I concerning common issues relating to the defendant tobacco companies' conduct and to the general health effects of smoking. *Id.* After Phase I, the jury reached a verdict in favor of the class. *Id.* at 1257. After Phases II-A and II-B, which were intended to determine entitlement and damages for the class representatives and the class, the jury awarded the class representatives $12.7 million in compensatory damages and the class as a whole $145 billion in punitive damages. *Id.* The tobacco companies appealed, and the supreme court eventually decertified the class and vacated the punitive-damages award. *Id.* at 1269. However, the supreme court held that some factual findings regarding liability made during Phase I of the trial could be retained for individual actions by *Engle* class members. *Id.* at 1254-55.

### *Analysis*

"We review the denial of a motion for directed verdict de novo." *Sorel v. Koonce*, 53 So. 3d 1225, 1227 (Fla. 1st DCA 2011). A directed verdict is proper only "where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 329 (Fla. 2001); Fla. R. Civ. P. 1.480.

In *Martin*, we described an *Engle* plaintiff's burden of persuasion on the fraudulent concealment claim:

---

[2] In 2017, the supreme court held that "when a jury finds for an *Engle* progeny plaintiff on intentional tort claims, the plaintiff's award may not be reduced by comparative fault." *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 305 (Fla. 2017).

3

> To prevail on the fraud by concealment claim, the plaintiffs had to prove the tobacco companies concealed or failed to disclose a material fact; the companies knew or should have known the material fact should be disclosed; the companies knew their concealment of or failure to disclose the material fact would induce the plaintiffs to act; the tobacco companies had a duty to disclose the material fact; and the plaintiffs detrimentally relied on the misinformation.

53 So. 3d at 1068.

Here, the *Engle* findings establish that Appellant "made a false or misleading *statement* of material fact with the intention of misleading smokers," and "concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both." *Engle*, 945 So. 2d at 1257 n.4 (emphasis added).

Liability for fraudulent concealment cannot be shown without reliance on a false statement, absent a fiduciary relationship that would create a duty to disclose. *See TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose"); *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995) ("[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them."). In a commercial transaction in which "the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003).

Thus, even with the benefit of the *Engle* findings, plaintiffs claiming fraudulent concealment must prove that they relied to their detriment on false statements from the tobacco companies. *Hess v. Philip Morris USA, Inc.,* 175 So. 3d 687, 698 (Fla. 2015) ("*Engle*-progeny plaintiffs must *certainly prove* detrimental

4

reliance in order to prevail on their fraudulent concealment claims.") (emphasis added). Otherwise, no duty to disclose information would be imposed on the companies in this transaction between a tobacco company and a consumer who purchased cigarettes. The supreme court in *Phillip Morris USA, Inc. v. Douglas* noted that the very reason the *Engle* class was decertified was "'because *individualized issues* such as legal causation, comparative fault, and damages predominate.'" 110 So. 3d 419, 424 (Fla. 2013) (quoting *Engle*, 945 So. 2d at 1268) (emphasis added). In the context of fraudulent concealment, "causation" includes individual reliance. *See, e.g., Humana Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999) (holding that the federal second circuit court properly applied reliance analysis to determine causation and liability in class action).

In *Martin*, this court analyzed what constitutes sufficient evidence for an *Engle* plaintiff's fraudulent concealment claim. 53 So. 3d at 1069. There, R.J. Reynolds argued that the appellee failed to prove reliance, because she presented no direct evidence that the decedent relied on omissions in information disseminated by the tobacco companies. *Id.* This court held that *direct* evidence of reliance was not required:

> [T]he record contains *abundant evidence* from which the jury could *infer* Mr. Martin's reliance on pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health.

*Id.* (emphasis added).

Here, Appellee argues that, as in *Martin*, he presented evidence of the decedent's smoking history and of the tobacco companies' pervasive and misleading advertising campaign, from which the jury could infer the decedent's detrimental reliance.

Appellee presented evidence of the decedent's smoking history, and presented extensive expert testimony regarding the tobacco companies' misleading and pervasive campaign, but he presented inadequate evidence from which the jury could infer

5

that the decedent relied to her detriment on any false statements from the tobacco companies. *See Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730, 733 (Fla. 1961) ("circumstantial evidence in a civil action will not support a jury inference if the evidence is purely speculative and, therefore, inadequate to produce an inference that outweighs all contrary or opposing inferences"). Testimony indicated that the decedent was uninterested in advertisements: Appellee testified that he did not know whether the decedent was influenced by cigarette advertisements and that they had never discussed any statements by tobacco companies; Appellee's son testified that he could not recall the decedent ever expressing interest in a statement from a tobacco company; and Appellee's sister-in-law testified that she had never heard the decedent mention a cigarette advertisement. While Appellee testified that he was "sure" the decedent saw cigarette advertisements on television, he also testified that he did not know if she saw any "statements" from any tobacco companies. Thus, *no testimony* connected the decedent's smoking to the false information disseminated by the tobacco companies.

While the *Engle* findings generally establish that Appellant made misleading statements and concealed material information, the supreme court in *Engle* specifically found that the trial court's Phase I findings on fraud should not be retained, as they "involved highly individualized determinations." *Engle*, 945 So. 2d at 1269.

Appellee argues individual reliance is established through evidence of a plaintiff's "life, knowledge, attitudes, and smoking behavior" that, coupled with the evidence of the tobacco companies' pervasive campaign, would allow the jury to infer that honesty from the industry, rather than perpetuation of the false controversy, would have made a difference to the plaintiff. Counsel argued that a plaintiff who smoked filtered cigarettes has presented evidence from which reliance can be inferred because the word "filter" connotes a healthier cigarette, yet expert testimony established that filters do nothing to make cigarettes healthier. Counsel further argued that the tobacco companies concealed the fact that nicotine was addictive, and expert testimony established generally that smokers have greater success in quitting when they are aware that cigarettes are addictive. Appellee asserts that the decedent would have been

6

more likely to quit if the information about nicotine's addictive nature had been disclosed.

Although evidence here suggested that the decedent believed filtered cigarettes were less harmful, no evidence connected that belief to the tobacco companies' statements other than the word "filter." The *Engle* class was decertified because issues of causation involve highly individualized findings. *Douglas*, 110 So. 3d at 424. To hold that smoking filtered cigarettes or viewing advertisements establishes sufficient evidence for a fraudulent-concealment claim would eliminate the requirement that plaintiffs must individually show *how* they relied on the tobacco companies' statements. Appellee's argument that knowledge about the addictiveness of nicotine generally shows that smokers are better able to quit does not show that the decedent relied to her detriment on any tobacco company's statement.

In *Martin*, we did not state which facts were sufficient to show reliance; we held only that reliance can be proven by circumstantial evidence. 53 So. 3d at 1069. This is an unremarkable proposition, as circumstantial evidence can establish civil liability. *Voelker v. Combined Ins. Co. of Am.,* 73 So. 2d 403 (Fla. 1954). But circumstantial evidence cannot merely raise an unfounded suspicion or legally sufficient speculation that allows an intentional-tort claim to be submitted to a jury. While *Martin* holds that detrimental reliance on false statements can be proved through inference, it cannot be read to circumvent the requirements of *Engle*, *Douglas*, and *Hess* that plaintiffs must prove such reliance based on some evidence to support the inference and the supreme court's holdings on the merit of circumstantial evidence to support liability. *Trusell*, 131 So. 2d at 733. The circumstantial evidence must establish individualized reliance by the plaintiff, and this cannot be shown through mere presentation of general evidence of the plaintiff's life and behavior, where, as here, that evidence gives no indication that the plaintiff relied on any false information disseminated by the tobacco companies. To allow such a broad reading of *Martin* would abrogate the requirement that *Engle* plaintiffs prove detrimental reliance, and contradict the clear statement in *Hess* that the plaintiff "must certainly prove detrimental reliance" to prevail on a claim of fraudulent concealment. *Hess*, 175 So. 3d at 698.

To hold a party liable for fraudulent concealment – where there was no duty established as a matter of law and no evidence of any reliance on a false statement – would allow a plaintiff to impose severe consequences on a party where the plaintiff never proved reliance on any false statements. Here, those consequences include allowing Appellee to avoid the jury finding the decedent 33% at fault, and instead to recover the entire damages award despite the jury's decision to the contrary.

In addition to contravening the supreme court's holdings requiring individualized proof in tobacco cases, such a holding would contradict black-letter law on the burden of persuasion in civil cases in which a plaintiff relies on circumstantial evidence to support an inference, here being the inference that because the decedent saw advertising containing false statements about the risks of smoking, she in fact relied on those statements, which resulted in her disease. *Trusell*, 131 So. 2d 733: *Voelker*, 73 So. 2d at 405-06. In *Trusell*, the supreme court relied on its holding in *Voelker*, reiterating that a jury verdict cannot be predicated on circumstantial evidence that established only potential speculation. *Trusell*, 131 So. 2d at 733. Thus, here, the fact that the decedent saw advertising cannot prove reliance, as she may or may not have internalized the false statements in the advertisements and changed her behavior accordingly. In fact, as noted above, the evidence shows that she did not. There was no evidence admitted that the decedent relied on these false statements; only that she was exposed to the statements. This is not enough. In *Trusell,* the court noted that "a jury could not reach a conclusion imposing liability . . . *without indulging in the prohibited mental gymnastics* of constructing one inference upon another inference in a situation where, admittedly, the initial inference was not justified to the exclusion of all other reasonable inferences." 131 So. 2d at 733 (emphasis added).

Because Appellee failed to present adequate evidence as a matter of law that the decedent relied on fraudulent statements by Appellant regarding the health hazards of smoking cigarettes, we reverse the trial court's denial of Appellant's motion for a directed verdict on the fraudulent concealment and conspiracy claims. We remand for an order granting the directed verdict and reducing the compensatory damage award to deduct the decedent's comparative fault. We need not reach the issue of

whether the trial court erred in rejecting Appellant's requested jury instruction requiring the jury to find that the decedent relied on a "statement" to find fraudulent concealment and conspiracy, in light of our holding directing that the verdict be granted for Appellant on fraudulent concealment and conspiracy.

We reject all other arguments raised by Appellant.

AFFIRMED in part, REVERSED in part, and REMANDED.

WINSOR, J., concurs; MAKAR, J., dissents with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

MAKAR, J., dissenting.

A question in this *Engle*-progeny case is whether there is record evidence from which the jury could infer that Mrs. Whitmire, a life-long cigarette smoker, was aware of the tobacco advertising campaign and that she relied to her detriment on the misinformation it contained. Because the answer is yes, and our decision in *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060 (Fla. 1st DCA 2010) (upholding verdict where reliance was proven by inference), remains applicable law, I cannot join in reversing the verdict.

Mrs. Whitmire began smoking at age fourteen and did so at the rate of one to two packs daily—interrupted only during the pregnancy of her son—until she died in 1995 of lung cancer. She married her husband, also a heavy smoker, in 1968; they met in 1966 when she was nineteen, and he was twenty-three. He later quit smoking in the 1980s, but she could not.

At trial, extensive evidence was presented that tobacco companies, including R.J. Reynolds Tobacco Company ("RJR"),

9

participated in multi-decade, pervasive advertising campaigns that concealed the adverse health effects of smoking from cigarette consumers during the time period when Mr. Whitmire and his wife were heavy smokers and multi-media consumers. Specifically, Mr. Whitmire testified that they watched "a lot" of television together including programs such as *I Love Lucy*, *Gunsmoke*, and the *Beverly Hillbillies*, which were ones featured in the expert testimony about the tobacco companies' misleading advertising campaigns. Mr. Whitmire was "sure" that they saw cigarette advertisements when they watched television together. She watched both local and national news programs (preferring CBS and Walter Cronkite) and some of the early music videos (including a song called "Smoke! Smoke! Smoke!"). Mr. Whitmire recalled that they watched *Perry Mason* and that her favorite show was *Dallas*. Mrs. Whitmire kept up on current events. They subscribed to the *Tallahassee Democrat* (Mr. Whitmire's father was the paper's circulation manager). Mr. Whitmire read the paper every day, Mrs. Whitmire less so. She read *Reader's Digest* and *Life Magazine*, the former one of the few magazines that occasionally had anti-smoking articles, albeit a very minor percentage of their overall content.

Mr. Whitmire recalled the time when he and his wife both had colds and "had heard that maybe menthol was a better cigarette," so they "tried them, and we kept smoking Salems the rest of our smoking history." At some point, he broke open a filter and showed her a "dirty brown" residue, noting that the substance was "something that's not going into our lungs," the inference being that the filter was removing harmful substances when, in fact, toxins were not removed. He testified that his wife, up until her diagnosis of lung cancer, did not understand the addictive nature of nicotine; that there was arsenic in cigarette smoke; and that smoking might kill her. Although he and his wife did not hear or discuss specific "statements" from tobacco companies, they never heard any "statement" from the companies in their advertisements that their filters didn't work; that cigarette smoking was harmful; that a regular smoker had a 50% greater chance of dying from a smoking-related illness; or that cyanide, arsenic, and other carcinogens were in cigarette smoke.

The jury was instructed, in part, that the evidence of fraudulent concealment must show that "Mrs. Whitmire reasonably relied to her detriment on the concealment or omission of material facts concerning the health effects or addictive nature of smoking cigarettes or both by [RJR], and if so, whether such reliance was a legal cause of her lung cancer and death." Part of the instruction also said it was unnecessary "that a direct statement be made to Mrs. Whitmire in order that it give rise to the right to rely upon the statement for it is immaterial whether it passes through a direct or circuitous channel in reaching her, provided that it be made with the intent that it shall reach her and be acted upon by the injured party."*

As a whole, this evidence was sufficient under *Martin* to allow a jury to infer that Mrs. Whitmire was aware of or saw the misleading advertisements via the television and other media of the time, that she lacked important information as to the undisclosed harmful health effects of smoking, and that the disclosure of such information would have corrected her misunderstanding about the true nature of the product and potentially changed her smoking behavior. The counter-point is that she was so severely addicted to smoking (reflected in her life-long compulsive smoking from dawn to dusk and sometimes in the middle of the night) that nothing—even truthful disclosures of the severe health effects of smoking—would have persuaded her to change her behavior (her pregnancy being the exception). But these points and counter-points are factual

---

\* At trial and on appeal, RJR takes the position that the jury instructions must include a requirement that a plaintiff have relied on a specific "statement" versus a non-disclosure, but this position was rejected in *Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 443 (Fla. 2d DCA 2017), which explains convincingly why that is the correct result; *see also Cote v. R.J. Reynolds Tobacco Co.*, Nos.15-15633, 16-15957, 2018 WL 6167395, at *8 (11th Cir. Nov. 26, 2018) (noting *Duignan*'s "comprehensive review" of Florida fraudulent concealment law in the *Engle* context and concluding that "Florida courts have consistently held that *Engle*-progeny plaintiffs are not required to show reliance on a specific statement.").

matters the jury was entrusted to assess. *Martin*, 53 So. 3d at 1069 (upholding verdict based on "abundant evidence from which the jury could infer [plaintiff's] reliance on pervasive misleading advertising campaigns . . . and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health."); *Cote*, 2018 WL 6167395, at *9-*10 (reversing and remanding for entry of judgment in plaintiff's favor on claims of fraudulent concealment and concealment to fraudulently conceal on similar facts).

On this record, the jury could have believed and sided with either party's narrative or come down somewhere in-between as to the negligence and intentional tort claims (they assigned her 33% of the fault on the negligence claim), precluding a grant of a directed verdict for RJR. *See Martin*, 53 So. 3d (upholding jury verdict for plaintiff on all claims and assigning 34% of fault); *Cote*, 2018 WL 6167395, at *4 (upholding jury verdict for plaintiff on all claims and assigning her 40% of fault). Rather than a media "hermit" who was isolated from the tobacco companies' advertising campaigns, Mrs. Whitmire fully engaged in the media of the day (TV, newspaper, magazines) to such an extent that her husband said he was "sure" that they saw the misleading cigarette advertisements. On balance, the record evidence is sufficient for the jury to have concluded that she "reasonably relied to her detriment on the concealment or omission by RJR of material information not otherwise known or available or RJR's failure to disclose material facts concerning the health effects or addictive nature of smoking cigarettes" and that this reliance was a cause of her death. For that reason, I cannot join in reversing the verdict in her favor.

––––––––––––––––––––––

Charles F. Beall, Jr., of Moore, Hill & Westmoreland, P.A., Pensacola; Emily C. Baker of Jones Day, Atlanta, GA; Edward M. Carter and Kenneth M. Grose of Jones Day, Columbus, OH; Charles R. A. Morse of Jones Day, New York, NY; Michael A. Carvin, Jones Day, Washington, D.C.; Kenneth R. Hart of Ausley McMullen, Tallahassee, for Appellant.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, for Appellee.