[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14255

Non-Argument Calendar

_____

PATRICIA YOUNG,
on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

*versus*

COMMUNITY HEALTH SYSTEMS, INC,

HERNANDO HMA, LLC,

d.b.a. Bravera Health Brooksville,

JOHN DOES 1-5,

CHSPSC, LLC,

CHS/COMMUNITY HEALTH SYSTEMS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00329-SCB-AEP

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiff Patricia Young went to the emergency room after a bicycle accident. Upon receiving her bill, she noticed she had been charged nearly $4,000 for an "ER Visitation Fee." Believing the fee to be unlawful, she brought this suit against defendants Community Health Systems, Inc., Hernando HMA, LLC, d.b.a. Bravera Health Brooksville, CHSPCS, LLC, CHS/Community Health Systems, Inc., and John Does 1–5. The distinctions between these defendants are irrelevant for purposes of this appeal; for ease of reading, we refer to all defendants collectively as "the Hospital."

Young alleged violations of Florida's Deceptive and Unfair Trade Practices Act and Florida common law. The district court dismissed Young's suit after concluding that her operative complaint failed to state any plausible claim to relief. Young appealed. We affirm.

**I.**

This appeal comes to us at the motion-to-dismiss stage. Accordingly, the following recitation of background facts comes

primarily from Young's operative complaint, with the allegations in that complaint taken as true. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022). In most appeals at this stage, the operative complaint would be the only source of factual information. But the nature of this suit and the parties' arguments require us to look at two pieces of evidence submitted by the Hospital. One piece of evidence is the contract at the center of this lawsuit. That contract is central to Young's case, so we treat it as a part of the complaint itself. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). The other piece of evidence is the uncontroverted testimony of the Hospital's Chief Administrative Officer. We use that testimony for the limited purpose of ensuring that we have jurisdiction over Young's appeal. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013).

This dispute arises from Young's visit to the Hospital after a bicycle accident. While in the emergency room, Young was presented with the Hospital's standardized Consent for Service Agreement. As is relevant here, the Agreement laid out Young's financial obligations. Specifically, the Agreement contained a promise from Young to pay the Hospital "in accordance with the regular rates and terms of the Facility." Young executed the Agreement, received treatment, and was discharged from the Hospital.

Young's hospital bill totaled $7,543.64. The Hospital later gave Young a discount, bringing her total down to $5,657.74. State Farm Auto Insurance paid the Hospital $4,526.19 on Young's behalf; Young remained responsible for the remaining $1,131.55.

Eventually, the Hospital referred the $1,131.55 debt to a collection agency, but it appears that the agency's efforts were fruitless. The Hospital's Chief Administrative Officer testified in the district court that, shortly after Young filed this lawsuit, the Hospital discharged Young's debt and waived any legal right to collect from Young. There is no allegation that Young ever spent any of her own money to pay off the amount that remained after State Farm's payment to the hospital. Young alleges, however, that the agency's collection efforts harmed her credit score and caused her to suffer emotional distress.

Young takes issue with one line item on her hospital bill: an "ER Visitation Fee" of $3,922.68. She alleges that it is the Hospital's practice to charge every emergency room patient an ER Visitation Fee, but that she had no knowledge of, and no reasonable way of learning about, that practice prior to signing the Agreement. More specifically, Young alleges that no Hospital employee notified her about the ER Visitation Fee before she agreed to receive treatment at the Hospital, that the Agreement did not alert her to such a fee, that the Hospital's website is silent about the fee, and that the Hospital in no other way informed her that an ER Visitation Fee would be charged. Young also says that, had she been made aware of the ER Visitation fee, she would have gone elsewhere for medical treatment. Young believes that the Hospital purposefully hid its ER Visitation Fee until after Young had agreed to receive treatment. That alleged intentional concealment, Young says, violated Florida's Deceptive and Unfair Trade Practices Act, constituted a material breach of the Agreement, and amounted to a breach of

Florida's common law duty to disclose material information during contract negotiations.

The district court dismissed Young's suit. Young appealed. We affirm.

## II.

We review de novo a plaintiff's standing. *SEC v. Quest Energy Mgmt. Grp., Inc.*, 768 F.3d 1106, 1108 (11th Cir. 2014). We also review de novo a district court's dismissal for failure to state a claim. *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

## III.

Young contends that the district court should be reversed because it misapplied Florida law. The Hospital, in addition to defending the district court's decisions, contends that Young lacks Article III standing. If true, the district court was without jurisdiction to entertain Young's lawsuit. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974–75 (11th Cir. 2005). Accordingly, our analysis must begin with the threshold issue of standing. *Id.*

### A.

Young bears the burden of establishing Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Young has standing only if (1) she has suffered an injury in fact, (2) her injury is fairly traceable to the Hospital's allegedly unlawful conduct, and (3) the relief she seeks will likely redress the injury she has suffered. *Id.* A

plaintiff must have standing for each form of relief sought. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Young seeks declaratory and injunctive relief prohibiting the Hospital from imposing ER Visitation Fees in the future. She also seeks monetary damages to compensate her for the harm she has suffered as a result of the Hospital's attempts to collect payment for the ER Visitation Fee.

Young lacks standing to pursue claims for declaratory or injunctive relief. Those forms of relief either stop an ongoing harm or prevent a future harm. Thus, Young must establish that she is suffering an ongoing harm or in danger of suffering a harm in the near future. *Elend v. Basham*, 471 F.3d 1199, 1207–08 (11th Cir. 2006). No such showing has been made. There's no allegation or evidence that the Hospital will subject Young to another ER Visitation Fee in the future—indeed, Young's complaint leads one to believe that she will no longer go to the Hospital for treatment as long as the Hospital continues to charge the fee. And although Young's complaint originally alleged some ongoing harms associated with the ER Visitation Fee already charged—i.e., the consequences of the Hospital's continued collection efforts—those harms have ended. The Hospital discharged the debt and, through the uncontroverted sworn testimony of its Chief Administrative Officer, affirmatively waived any legal right to collect the $1,131.55 that was outstanding when Young commenced this action.

Young does have standing, however, to seek compensatory damages. The Hospital's argument to the contrary is premised on

State Farm's $4,526.19 payment to the Hospital on behalf of Young. As the Hospital sees things, the $4,526.19 State Farm payment should be considered to have taken care of the $3,922.68 ER Visitation Fee, such that Young was never responsible for paying the ER Visitation Fee. Thus, the argument goes, the imposition and collection of the ER Visitation Fee never injured Young; any adverse effect to Young was caused by the remaining $1,131.55, which comprised charges to which Young has never objected.

The Hospital's argument misses the mark. Even if the State Farm payment is treated as full payment for the ER Visitation Fee, the imposition and attempted collection of the ER Visitation Fee still injured Young. Young still owed $1,131.55 after accounting for State Farm's payment. When Young could not or would not pay, the Hospital referred the debt for collection. Young alleges those collection efforts negatively impacted her credit score and caused her emotional distress. Had the ER Visitation Fee never been imposed, State Farm's payment would have covered the entire bill. So Young's injuries were caused by the allegedly unlawful ER Visitation Fee, and an award of monetary damages would redress her injuries.

*B.*

Assured of our jurisdiction, we now turn to the merits of Young's appeal. She contests the district court's dismissal of her Florida Deceptive and Unfair Trade Practices Act claim and her Florida common law claims for failure to disclose and for breach of contract. In the operative complaint, Young accused the Hospital

of violating Florida Statutes section 395.301. The district court did not directly address that argument, and Young only mentions the statute twice in passing in her briefing on appeal. Accordingly, we do not consider any section 395.301 claim as being at issue in Young's appeal.

All of Young's claims arise under Florida substantive law, so we look first to the Florida Supreme Court for guidance. If the Florida Supreme Court has not decided an issue of state law, "we are bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014) (quotation marks and citation omitted).

1.

The district court correctly dismissed Young's FDUTPA claim. FDUTPA provides that "[a]n act or practice required or specifically permitted by federal or state law" can never violate the statute. Fla. Stat. § 501.212(1). Florida courts have treated this so-called "safe harbor" as prohibiting a plaintiff from using FDUTPA to create new obligations, or to broaden existing obligations, when a defendant's conduct is already in compliance with federal law or regulations. *See Eirman v. Olde Disc. Corp.*, 697 So. 2d 865, 866 (Fla. Dist. Ct. App. 1997). So, if a defendant complies with federal information-disclosure laws or regulations, then no FDUTPA claim lies for insufficient disclosure. *See Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054 (Fla. Dist. Ct. App. 2007).

Young's FDUTPA claim is barred by the safe harbor. Disclosure of costs associated with medical treatment is a subject of federal law. *See* 42 U.S.C. § 300gg-18(e). Regulations promulgated pursuant to section 300gg-18(e) seek "to promote greater price transparency for patients . . . ." 83 Fed. Reg. 41144, 41686. Indeed, the Centers for Medicare and Medicaid Services specifically recognized "patients being surprised by facility fees . . . for emergency department visits" as a focus of the regulations relevant to this case. *Id.* Young's complaint acknowledges that the Hospital's chosen method of compliance with federal law is publishing online a list—known as a "chargemaster"—of items, services, and other costs associated with receiving treatment. And Young has explicitly declined to allege or otherwise argue that the ER Visitation Fee is not disclosed in the chargemaster. So Young has conceded that, through publication of the chargemaster, the Hospital has complied with the applicable federal regulations. That concession places Young's claim squarely within FDUTPA's safe harbor.

Young tries to get around the safe harbor by recharacterizing the Hospital's allegedly unlawful conduct. Young wants this to be a case about the Hospital intentionally hiding the ER Visitation Fee from prospective patients. That theory assumes, however, that the ER Visitation Fee was hidden. And that assumption is in direct conflict with Young's concession that the Hospital—in compliance with federal law—published its ER Visitation Fee in the chargemaster. So this cannot be a case about "concealing" the ER Visitation Fee. This case can be viewed only as a challenge to the way the ER Visitation Fee was disclosed. Because the Hospital's method of

disclosure complied with federal information disclosure laws and regulations, Young's claim is barred by FDUTPA's safe harbor.

2.

Young's common law failure-to-disclose claim is also insufficiently pleaded. Under Florida law, "[a] defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538 (Fla. Dist. Ct. App. 2018) (quoting *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. Dist. Ct. App. 2000)). "This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003). "In a commercial transaction in which 'the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.'" *R.J. Reynolds Tobacco Co.*, 260 So. 3d at 539 (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003)). The district court concluded, and Young does not dispute, that Young's operative complaint did not allege facts giving rise to a fiduciary relationship or other traditional relationship of trust or confidence.

In response to the district court, Young argues that the absence of a fiduciary relationship should not be dispositive. She contends that the Hospital was "in a superior bargaining position" because it held "specialized knowledge of [its] billing practices" and

because Young "was physically injured at the time the parties contracted," such that Young "lacked the ability to agree or disagree with an undisclosed fee imposed on her without her knowledge." To justify a diversion from the general rules of contract law, a disparity in bargaining power must be so "substantial" that it is "overwhelming." *See VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 39 (Fla. Dist. Ct. App. 2005); *Ware Else, Inc. v. Ofstein*, 856 So. 2d 1079, 1081–82 (Fla. Dist. Ct. App. 2003). There's nothing to suggest that level of disparity here.

For starters, the idea that Young's injuries rendered her incapable of effectively negotiating with the Hospital contradicts her allegation that, had she known about the ER Visitation Fee, she would have sought treatment elsewhere. Young was either too injured to negotiate or she was healthy enough to take her business elsewhere—she cannot have it both ways. The allegation that she would have gone elsewhere for medical attention is in the operative complaint and thus controls over the too-hurt-to-negotiate argument raised in her briefing. *See Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (noting that "a plaintiff cannot amend his [or her] complaint through argument . . ."). Young's argument also seems to assume that the Hospital knew the exact amount of the ER Visitation Fee. But her complaint alleges that the amount charged fluctuates and is not even determined until after a patient's discharge. So on the face of Young's own complaint, it was impossible for the Hospital to disclose the exact amount of the ER Visitation Fee at the time she signed the Agreement.

Given the facts alleged in Young's complaint, the text of the Agreement, and her concessions about the content of the Hospital's online chargemaster, there is little to distinguish the ER Visitation Fee from the cost of treatment. The Agreement contains a general promise from Young to pay according to the Hospital's "regular rates and terms . . . ." At the time she executed the Agreement, the Hospital did not know the amount it would charge Young for either treatment or the ER Visitation Fee: both amounts would ultimately depend on things yet to occur. The Hospital did disclose, via its online chargemaster, the existence and range of costs of the ER Visitation Fee—just as it did with the usual costs of its offered medical services. Young makes no suggestion, however, that the Hospital unlawfully failed to disclose information relating to costs of treatment. She has not persuaded us that the two should be viewed differently.

*3.*

We cannot say Young's breach of contract claim was erroneously dismissed. A breach of contract claim arises when a defendant fails to make good on a contractual promise. *E.g.*, *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). But Young does not identify any promise that the Hospital made then failed to keep. Instead, Young's argument is that charging her the ER Visitation Fee breached the Agreement because (1) the Agreement authorized only the imposition of service-related charges, but (2) the ER Visitation Fee "covers overhead, administrative, and operational expenses." The district court rejected both

premises. The district court first concluded that the ER Visitation Fee is not the administrative charge that Young made it out it to be. The district court then decided that no matter how one describes the ER Visitation Fee, the Agreement nonetheless authorized the Hospital's imposition of the fee.

In her initial brief on appeal, Young challenges only the district court's first conclusion. It is not until her reply brief that she lays out an argument against the district court's second conclusion. Young's failure to include in her initial brief the attack on the district court's second conclusion means that second conclusion is not at issue in this appeal. *See Williams v. Obstfeld*, 314 F.3d 1270, 1278–79 n.9 (11th Cir. 2002). And that unchallenged conclusion by the district court is sufficient on its own for us to affirm the dismissal of Young's breach of contract claim.

**IV.**

The judgment of the district court is **AFFIRMED**.