DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____


R.J. REYNOLDS TOBACCO COMPANY f/k/a RJR Nabisco, Inc.,
individually and as successor by merger to Brown & Williamson Tobacco
Corp., individually and as successor by merger to The American Tobacco
Company, individually and as successor to Lorillard Tobacco Company,

Appellant,

v.

LAURA J. GIAMBALVO, as personal representative of the
Estate of Salvatore Giambalvo, Jr., deceased,

Appellee.


No. 2D2022-3194

_____


April 26, 2024

Appeal from the Circuit Court for Pinellas County; Patricia Muscarella,
Judge.

Troy A. Furhman and Marie A. Borland of Hill Ward Henderson, Tampa;
and Jason T. Burnette and Brian C. Lea of Jones Day, Atlanta, Georgia,
for Appellant.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota;
Gary M. Paige and Cassandra Lombard of Gordon & Partners, P.A.,
Davie; and James W. Gustafson, Jr., of Searcy Denney Scarola Barnhart
& Shipley, P.A., Tallahassee, for Appellee.


BLACK, Judge.

In this *Engle*[1] progeny case, R.J. Reynolds Tobacco Company appeals from the final judgment entered in favor of Laura Giambalvo, as personal representative of the Estate of Salvatore Giambalvo, Jr. We agree with Reynolds that its motion for directed verdict on the Estate's conspiracy to fraudulently conceal claim should have been granted. The final judgment is reversed in part, and the case is remanded for reduction of the compensatory damages in accordance with the jury's apportionment of fault and a new trial on the punitive damages claim.

In this wrongful death action against Reynolds, the Estate, alleging that Salvatore Giambalvo, Jr., was a member of the *Engle* class, asserted claims of negligence, strict liability, fraudulent concealment, and conspiracy to fraudulently conceal. At trial, the jury returned a verdict finding that Mr. Giambalvo was a member of the *Engle* class and that the Estate had proven the negligence, strict liability, and conspiracy to fraudulently conceal claims. However, it rejected the Estate's fraudulent concealment claim, finding that Mr. Giambalvo did not rely to his detriment on a statement made by Reynolds.[2] The jury awarded a total of $7,000,000 in compensatory damages, apportioning 50% fault to Reynolds and 50% fault to Mr. Giambalvo. The jury also awarded $8,495,000 in punitive damages. Judgment against Reynolds was entered accordingly.

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

[2] The jury was properly instructed on the reliance element. *See R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 539-40 (Fla. 1st DCA 2018); *see also R.J. Reynolds Tobacco Co. v. Prentice* (*Prentice I*), 290 So. 3d 963, 965-66 (Fla. 1st DCA 2019), *approved by* 338 So. 3d 831, 842 (Fla. 2022).

Reynolds moved to set aside the judgment in accordance with the motion for directed verdict it had made during trial but which had not been ruled upon by the trial court.[3] As it had during trial, Reynolds asserted that the Estate had failed to present evidence of Mr. Giambalvo's reliance on a statement by Reynolds or a tobacco-industry coconspirator. Reynolds accurately set forth the law requiring the Estate to prove detrimental reliance in order to prevail on its conspiracy to fraudulently conceal claim. *See Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 698 (Fla. 2015). It then identified testimony supporting its contention that the Estate had failed to meet its burden.

After the motion had been filed but before the trial court ruled on it, the Florida Supreme Court issued *Prentice v. R.J. Reynolds Tobacco Co.* (*Prentice II*), 338 So. 3d 831 (Fla. 2022). Reynolds supplemented its motion to set aside the judgment, arguing that *Prentice II* "remove[d] all doubt that Reynolds [was] entitled to a directed verdict where the Estate's evidence did not satisfy the supreme court's definition of the reliance element applicable to conspiracy claims in *Engle* progeny cases."

A hearing was held, and the trial court reserved ruling and asked the parties to submit proposed orders. Ultimately, the court denied Reynolds' motion. In the order of denial, the trial court cited testimony including Ms. Giambalvo's recollection that Mr. Giambalvo did not believe the warning statements on cigarette packages,[4] her testimony as well as the adult children's that Mr. Giambalvo told them that the "toxins" and "stuff" in his cigarettes were not getting into his lungs

---

[3] Reynolds alternatively moved for new trial.

[4] In fact, Ms. Giambalvo testified that her husband told her "[y]ou can't believe everything you read" about the warning labels.

because of the filters in the cigarettes he smoked, and the Estate's expert's testimony regarding the "pervasive and misleading advertising campaigns perpetuated" by tobacco coconspirators. The court rejected Reynolds' arguments that "[w]ith only generalized evidence about widespread advertising, a plaintiff cannot 'prove a causal connection running from an *Engle* defendant's statement or statements, to the plaintiff's beliefs about the health effects or addictiveness of smoking cigarettes, to the plaintiff's injury,' " quoting *Prentice II*, 338 So. 3d at 837, and that "[a plaintiff's] false belief stemming from another source cannot provide a basis for holding an *Engle* defendant liable for conspiracy."

Our review of a trial court's denial of a motion to set aside the judgment in accordance with the motion for directed verdict is, like our review of the denial of a motion for directed verdict, de novo. *Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 143 (Fla. 4th DCA 2018) (citing *Aragon v. Issa*, 103 So. 3d 887, 888 (Fla. 4th DCA 2012)); *see Philip Morris USA Inc. v. Holliman*, 374 So. 3d 87, 92 (Fla. 3d DCA 2022) (citing *R.J. Reynolds Tobacco Co. v. Rouse*, 307 So. 3d 89, 92 (Fla. 3d DCA 2020)). A directed verdict should only be granted "where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538 (Fla. 1st DCA 2018) (first quoting *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 329 (Fla. 2001); and then citing Fla. R. Civ. P. 1.480).

In *Prentice II*, the supreme court "resolve[d] a district court conflict over what proof is required to prevail on the reliance element of [an *Engle* plaintiff's] fraudulent concealment and conspiracy claims—a disagreement that ha[d] led to divergent jury instructions in *Engle* progeny cases." 338 So. 3d at 834. The court held that "an *Engle*

4

progeny plaintiff must prove reliance on a statement that was made by an *Engle* defendant (for a concealment claim) or a co-conspirator (for a conspiracy claim) and that concealed or omitted material information about the health effects or addictiveness of smoking cigarettes." *Id.* In reaching that conclusion, the court reiterated that the Phase I *Engle* findings—those findings "related 'exclusively to the defendants' conduct and the general health effects of smoking' "—do not satisfy the reliance element of fraudulent concealment claims.[5] *Id.* at 835-36 (quoting *Engle v. Liggett Grp.*, 945 So. 2d 1246, 1256 (Fla. 2006)). This includes the Phase I finding that the tobacco coconspirators "agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment." *Id.* at 835 (quoting *Engle,* 945 So. 2d at 1257 n.4). The court further held that an *Engle* progeny plaintiff's burden as to the reliance element of a fraudulent concealment claim "is to prove that the defendant's fraudulent conduct—as defined in *Engle*—caused the plaintiff to form a false belief about the health effects or addictiveness of smoking cigarettes and then to act to his detriment." *Id.* at 840.

As relevant to our decision, *Prentice II* states that "reliance requires the plaintiff to have 'received, believed, and acted upon' a

---

[5] The fraudulent concealment claims referenced in *Prentice II* include both fraudulent concealment and concealment conspiracy, and the court treated the "claims interchangeably." 338 So. 3d at 837. Additionally, the *Prentice II* court's statement and decision not to review Reynolds' challenge to the res judicata effect of the Phase I findings preclude our review of the same argument raised by Reynolds in this appeal. We note only that *Prentice II* applied the supreme court's prior holdings giving res judicata effect to the Phase I findings without endorsing them or questioning their correctness. 338 So. 3d at 836-37.

misrepresentation by the defendant." 338 So. 3d at 838 (quoting John C.P. Goldberg, Anthony J. Sebok & Benjamin C. Zipursky, *The Place of Reliance in Fraud*, 48 Ariz. L. Rev. 1001, 1007 (2006)). "[W]hat matters for purposes of reliance is that the plaintiff be able to prove a causal connection running from an *Engle* defendant's statement or statements, to the plaintiff's beliefs about the health effects or addictiveness of smoking cigarettes, to the plaintiff's injury." *Id.* at 837. That is, "[t]he element of reliance overlaps with (and may be considered a form of) the usual requirement in tort that a defendant's wrong be a factual or 'but for' cause of the harm that the plaintiff suffered." *Id.* at 838 (quoting Restatement (Third) of Torts: Liability for Economic Harm § 11 cmt. a (Am. L. Inst. 2020)).

During trial, Ms. Giambalvo testified, as did the three adult children of Mr. and Ms. Giambalvo and Mr. Giambalvo's cousin. Though they each presented testimony concerning Mr. Giambalvo's addiction to cigarettes, none of them testified that Mr. Giambalvo relied upon statements from tobacco coconspirators when he chose to begin smoking or at any point during his decades of smoking. When Ms. Giambalvo was asked during trial whether she was aware of Mr. Giambalvo "ever seeing or hearing or relying on any information from" the "various tobacco industry organizations that have been talked about in the trial," she responded, "No." When she was asked whether she was aware if Mr. Giambalvo had ever seen, heard, or relied on any of the "statements that [the Estate's expert] talked about," she responded, "No." Ms. Giambalvo further testified that she was not aware of her husband ever making any smoking decision based on any action of a tobacco coconspirator. Each of the children testified similarly, as did Mr. Giambalvo's cousin. In addition, Mr. Giambalvo's cousin testified to the approximate age at

6

which Mr. Giambalvo began smoking, initially "sneaking" cigarettes from his parents who had "always" smoked. She testified that many of Mr. Giambalvo's family members smoked, including five brothers and sisters, and that she had no recollection of Mr. Giambalvo reading the newspaper or watching the news at around the time he began smoking. And while she recalled that cigarettes were advertised on television when she and Mr. Giambalvo were growing up, her testimony was that she and Mr. Giambalvo saw those advertisements at a point in time after Mr. Giambalvo began smoking. That was the extent of her testimony regarding Mr. Giambalvo receiving tobacco coconspirators' statements.

None of the witnesses testified, for example, that Mr. Giambalvo viewed "false and misleading statements about dangers associated with smoking" on television or otherwise, much less that "he expressed his belief after [viewing such statements] that cigarettes were not bad for you." *Cf. Holliman*, 374 So. 3d at 93. And while Ms. Giambalvo testified that Mr. Giambalvo had once spoken of filtered cigarettes, she did not testify that Mr. Giambalvo smoked filtered cigarettes because of tobacco coconspirators' statements.[6] *Cf. Philip Morris USA Inc. v. Cuddihee*, 338 So. 3d 444, 447 (Fla. 1st DCA 2022) ("Decedent's daughter expressly identified tobacco advertisements as the source of the information prompting Decedent's switch to Merits because he used words 'almost match[ing] verbatim' the language of the advertisements. Other evidence showed that Decedent was on Appellant's mailing list and personally engaged with Appellant's various marketing campaigns by signing up for promotions, returning postcards, filling out surveys, and maintaining a

---

[6] We decline to address Reynolds' argument that the word "filter" on cigarette packaging is not, in and of itself, a fraudulent statement pursuant to *Prentice II*.

jar full of cigarette coupons distributed by Appellant." (alteration in original) (footnote omitted)); *R.J. Reynolds Tobacco Co. v. Hamilton*, 316 So. 3d 338, 342 (Fla. 4th DCA 2021) ("Certainly, individualized reliance can be inferred from circumstantial evidence showing Mrs. Hamilton was exposed to tobacco industry statements and believed filtered cigarettes were safer.").

The Estate "presented evidence of the decedent's smoking history, and presented extensive expert testimony regarding the tobacco companies' misleading and pervasive campaign"; however, it "presented inadequate evidence from which the jury could infer" that Mr. Giambalvo relied on coconspirators' statements. *See Whitmire*, 260 So. 3d at 539.[7] The Estate failed to present evidence that a tobacco coconspirator's "fraudulent conduct—as defined in *Engle*—caused the [decedent] to form a false belief about the health effects or addictiveness of smoking cigarettes *and* then to act to his detriment." *See Prentice II*, 338 So. 3d at 840 (emphasis added); *see also Cuddihee*, 338 So. 3d at 446 (discussing *Whitmire* and stating that the court "reversed an *Engle* plaintiff's verdict because the detrimental reliance evidence failed to connect any misleading statements made by tobacco companies with real-life smoking decisions made by the decedent smoker" where "the plaintiff's witnesses couldn't say whether the decedent smoker had paid any attention to

_____

[7] To the extent that previous decisions of this court are not factually distinguishable and fail to require an *Engle* plaintiff to prove that he "received, believed, and acted upon the [*Engle* defendants'] statements," *Prentice II*'s disapproval of this court's opinion in *Philip Morris USA Inc. v. Duignan* (*Duignan II*), 338 So. 3d 308 (Fla. 2d DCA 2022), also disapproves those cases. *See Prentice II*, 338 So. 3d at 840, 843.

misleading statements made by tobacco companies, [such that] detrimental reliance wasn't proven").

Even where the evidence is sufficient to establish that an *Engle* plaintiff received statements from a tobacco coconspirator that omitted material information, in the absence of evidence that he both believed and acted upon those statements, "*those statements* could not have harmed the plaintiff" and the plaintiff has failed to establish reliance. *Prentice II*, 338 So. 3d at 840. In this case, there was no evidence—direct or circumstantial—that Mr. Giambalvo acted upon a statement by a tobacco coconspirator when he began smoking at the age of twelve or thirteen[8] or when he began smoking filtered cigarettes. *Cf. id.* Given the supreme court's repeated statement that reliance requires a misrepresentation to have been "received, believed, and acted upon," we conclude that no proper view of evidence in this case supports a verdict in the Estate's favor on its conspiracy to fraudulently conceal claim.

Finally, we recognize that while *Prentice II* "resolve[d] a district court conflict over *whether* an *Engle* progeny plaintiff must prove reliance on a statement," it did "not address *how* the plaintiff may prove such reliance." 338 So. 2d at 837 n.2. We likewise do not address how reliance may be proven. We hold only that reliance was not proven in this case, through inference or otherwise, given the supreme court's "flesh[ing] out what" it means for an *Engle* plaintiff to "prove detrimental reliance in order to prevail on [a] fraudulent concealment claim[]." *See Prentice II*, 338 So. 3d at 837.

---

[8] In reaching this conclusion, we make no determination as to whether the television advertising Mr. Giambalvo and his cousin watched at some uncertain point in their youth were "statements that omitted material information." *See Prentice II*, 338 So. 3d at 840.

Because the trial court should have granted Reynolds' motion for directed verdict on the conspiracy to fraudulently conceal claim, we consider Reynolds' arguments that the negligence, strict liability, and conspiracy to fraudulently conceal claims are inextricably intertwined such that a new trial is required on the remaining two claims.[9]  As we did in *Philip Morris USA Inc. v. Duignan* (*Duignan III*), 370 So. 3d 978, 984-86 (Fla. 2d DCA 2023), we conclude that a new trial is not warranted.  The conspiracy claim is independent from the negligence and strict liability claims.  *See id.* at 984 (quoting *R.J. Reynolds Tobacco Co. v. Prentice* (*Prentice I*), 290 So. 3d 963, 971 (Fla. 1st DCA 2019) (Makar, J., dissenting)).  And as was the case in *Duignan III*, the order of verdict form interrogatories supports that conclusion.

A new trial is, however, required on punitive damages.  Again, our decision in *Duignan III* is instructive.  "[A] demand for punitive damages is 'not a separate and distinct cause of action; rather it is auxiliary to, and dependent upon, the existence of an underlying claim.' "  *Duignan III*, 370 So. 3d at 987 (alteration in original) (quoting *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1221 (Fla. 2016)).  Here, the jury was asked to determine whether the Estate was entitled to punitive damages in a separate interrogatory on the verdict form, and the jury later awarded punitive damages in a second phase of trial.  To determine both entitlement to punitive damages and amount of those damages, the jury was instructed to consider the conduct of Reynolds within the tobacco-industry conspiracy that harmed Mr. Giambalvo.  In closing arguments

---

[9] As to Reynolds' argument that an error in admitting demonstrative aids as substantive evidence requires reversal of the negligence and strict liability claims, any such error was harmless in this case and we decline to address the argument further.

in both phases of trial, the Estate argued that the jury should rely on evidence of the conspiracy in determining punitive damages. We cannot, therefore, conclude that there is no reasonable possibility that the conspiracy to fraudulently conceal claim contributed to the verdict on punitive damages. *See Duignan III*, 370 So. 3d at 987.

The final judgment is reversed in part. On remand, the trial court is directed to enter a verdict in Reynolds' favor on the conspiracy to fraudulently conceal claim, to reduce the amount of compensatory damages pursuant to the jury's apportionment of fault to Mr. Giambalvo, and to hold a new trial on the issues of entitlement to and amount of punitive damages.

Affirmed in part, reversed in part, and remanded.

VILLANTI and LaROSE, JJ., Concur.

————————————————

Opinion subject to revision prior to official publication.

11